# No. 23-40033

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,
                              Plaintiff-Appellee,

v.

RICARDO QUINTANILLA,
                              Defendant-Appellant.

consolidated with

---

No. 23-40068

---

UNITED STATES OF AMERICA,
                              Plaintiff-Appellee,

v.

ARTURO C. CUELLAR, Jr.,
                              Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Texas
McAllen Division, No. 7:19-cr-522-1 and No. 7:19-cr-522-3

---

BRIEF OF PLAINTIFF-APPELLEE

---

ALAMDAR S. HAMDANI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

RENATA GOWIE
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

## **STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is unnecessary in this case. The issues are straightforward, and several issues are not properly preserved for appellate review. Despite Defendants'[1] repeated mischaracterizations of the record in their joint brief, the facts and legal arguments are adequately presented in the Government's brief and the record.[2] Oral argument would not significantly aid the decisional process. Fed. R. App. P. 34(a)(2)(C).

---

[1] "Defendants" is the collective reference in this brief to Ricardo Quintanilla and Arturo Cuellar, Jr.

[2] The record contains some duplicate trial transcripts listed on the district court docket sheets as "amended." The duplicate transcripts appear to be identical to the originals, except the "amended" transcript of Day 4 of trial, at the bottom of page 137, contains the additional line: "BAILIFF: All rise." *Compare* ROA.23-40068.2268 (amended) *with* ROA.23-40068.1991 (original). The citations in this brief are to the original transcripts.

i

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ..................................i

TABLE OF AUTHORITIES................................................... viii

STATEMENT OF JURISDICTION.........................................1

STATEMENT OF THE ISSUES.............................................1

STATEMENT OF THE CASE ...............................................3

    *Introduction*........................................................3

    A.    Facts Established at Trial.......................................3

          *City Commissioners*................................................3

          *Arturo Cuellar Bribed Commissioner John Cuellar to Vote in Favor of CDM and Briones.* .......................................4

          *Quintanilla Bribed Commissioner Tafolla to Vote in Favor of CDM and Briones.* ....................................6

          *City Commission Meetings*....................................8

          *Coconspirators' Correspondence with Lopez*.........................11

          *Briones's Emails to the City Regarding the City Contracts* ...............................................13

          *The City's Payments to CDM, Briones, and LeFevre* ............14

          *Lopez Paid Defendants for Bribing Commissioners Tafolla and John Cuellar*.....................................14

# TABLE OF CONTENTS, cont'd

**Page**

*Quintanilla Attempted to Obstruct Justice* ........................... 15

B.    Procedural History. ................................................ 16

SUMMARY OF THE ARGUMENT ...................................... 20

ARGUMENT ............................................................. 24

*Preface* ............................................................... 24

I.    The constructive amendment claims are waived or otherwise fail under plain-error review. ............................. 27

    A.    Standard of Review ...................................... 27

    B.    Relevant Facts ............................................ 29

    C.    General Principles ....................................... 31

    D.    Single Conspiracy ....................................... 32

    E.    Defendants waived their challenge to the changes to the superseding indictment because they agreed to those changes. ......................................... 37

    F.    John Cuellar and Tafolla, elected public officials, owed a duty of honest services, not Arturo Cuellar. ... 39

II.    The district court acted within its discretion in denying Arturo Cuellar's recusal motion. His recusal arguments raised for the first time on appeal fail under plain-error review. ................................................................ 40

    A.    Standard of Review ...................................... 40

# **TABLE OF CONTENTS, cont'd**

**Page**

B.    Relevant Facts..................................................................41

C.    General Principles...........................................................41

D.    The judge properly denied the recusal motion............42

E.    Arturo Cuellar's additional arguments fail under
      plain-error review. ........................................................45

III.  The challenges to the sufficiency of the superseding
      indictment on the honest-services wire fraud (Counts 1,
      2, 5-7) fail under plain-error review. ..................................46

      A.    Standard of Review......................................................46

      B.    General Principles........................................................47

      C.    A Brief Background on Honest-Services Fraud,
            now Codified in 18 U.S.C. § 1346. ...............................47

      D.    Discussion....................................................................49

IV.   Arturo Cuellar has failed to show that the district court
      improperly chilled a defense witness's testimony. ...............53

      A.    Standard of Review......................................................53

      B.    Relevant Facts..............................................................54

      C.    Discussion....................................................................58

# **TABLE OF CONTENTS, cont'd**

**Page**

V. Quintanilla's Confrontation Clause challenges to coconspirator statements fail because the statements were nontestimonial. The district court acted within its discretion in admitting the coconspirator recordings under the coconspirator rule, Fed. R. Evid. 801(d)(2)(E). .... 59

    A.    Standard of Review ...................................................... 59

    B.    Relevant Facts............................................................ 60

            *Quintanilla's Motion in Limine* ................................... 60

            *LeFevre's "Beached Whale" Comment* .......................... 61

            *Lopez's Recordings* ...................................................... 62

    C.    Confrontation Clause .................................................. 65

    D.    Rule 801(d)(2)(E) ....................................................... 68

VI.A. The district court acted within its discretion in excluding a defense expert's testimony regarding the propriety of the contracts because it was irrelevant. .......... 71

    A.    Standard of Review ...................................................... 71

    B.    The court properly excluded Shaw's testimony as irrelevant.................................................................... 71

VI.B. The district court acted within its discretion in excluding privileged emails withheld in violation of discovery rules. ................................................................. 74

    A.    Standard of Review ...................................................... 74

# **TABLE OF CONTENTS, cont'd**

**Page**

B.      Relevant Facts...............................................................74

C.      The emails between J-III and its attorney were properly excluded. .....................................................75

VII. and IX.   The   district   court's   sentencing   findings regarding Arturo Cuellar's base offense level and   value   of   payment   and   Quintanilla's obstruction   of   justice   were   not   clearly erroneous. ..................................................................77

A.      Standard of Review .....................................................77

B.      Arturo Cuellar's base offense level was 14 because he was a public official. ...............................................77

C.      Arturo   Cuellar's   Value   of   Payment   was   $4.1 million.........................................................................80

D.      Quintanilla properly received a two-level increase for obstruction of justice................................................83

VIII. Arturo   Cuellar's   challenge   to   his   $947,454   money judgment   is   waived   for   inadequate   briefing   or   fails under plain-error review. ......................................................85

A.      Standard of Review .....................................................85

B.      Relevant Facts...............................................................85

C.      Arturo Cuellar waived Issue VIII for inadequate briefing (including failure to order the forfeiture hearing transcript). ......................................................87

# **TABLE OF CONTENTS, cont'd**

**Page**

    D.    No plain error regarding *Honeycutt/Reed*....................89

CONCLUSION .........................................................................91

CERTIFICATE OF SERVICE................................................92

CERTIFICATE OF COMPLIANCE.......................................93

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023) ............................................26

*Anderson v. City of Bessemer*, 470 U.S. 564 (1985) ................................84

*Ciminelli v. United States*, 598 U.S. 306 (2023) ...............................51, 52

*City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365 (1991) ..72

*Cleveland v. United States*, 531 U.S. 12 (2000) ................................46, 51

*Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993), *opinion reinstated in part on reh'g*, 61 F.3d 1113 (5th Cir. 1995) ..............87

*Crawford v. Washington*, 541 U.S. 36 (2004) ...................................65, 66

*Geders v. United States*, 425 U.S. 80 (1976) ...........................................53

*Giles v. California*, 554 U.S. 353 (2008) .................................................66

*Hamling v. United States*, 418 U.S. 87 (1974)........................................47

*Honeycutt v. United States*, 581 U.S. 443 (2017) ..............................88, 90

*In re Taylor*, 417 F.3d 649 (7th Cir. 2005) .............................................42

*Johnson v. Lumpkin*, 74 F.4th 334 (5th Cir. 2023) ................................41

*Johnson v. Zerbst*, 304 U.S. 458 (1938)..................................................38

*Kelly v. United States*, 140 S. Ct. 1565 (2020) .......................................50

*Krulewitch v. United States*, 336 U.S. 440 (1949) .................................68

*Liteky v. United States*, 510 U.S. 540 (1994) .........................................45

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                                    **Page(s)**

*McNally v. United States*, 483 U.S. 350 (1987) ................................ 46, 48

*Miranda v. Arizona*, 384 U.S. 436 (1966) ................................................ 58

*Percoco v. United States*, 598 U.S. 319 (2023) ................................... 39, 48

*Pondexter v. Quarterman*, 537 F.3d 511 (5th Cir. 2008) ........................ 89

*Skilling v. United States*, 561 U.S. 358 (2010) ..................... 47, 48, 49, 53

*Stirone v. United States*, 361 U.S. 212 (1960) ........................................ 31

*Taylor v. Illinois*, 484 U.S. 400 (1988) .................................................... 76

*Trevino v. Johnson*, 168 F.3d 173 (5th Cir. 1999) .................................. 42

*United States v. Alaniz*, 726 F.3d 586 (5th Cir. 2013) ............................ 67

*United States v. Alix*, 86 F.3d 429 (5th Cir. 1996) .................................. 24

*United States v. Allen*, 587 F.3d 246 (5th Cir. 2009) .............................. 40

*United States v. Baytank (Houston), Inc.*, 934 F.2d 599
    (5th Cir. 1991) ................................................................................. 37

*United States v. Beacham*, 774 F.3d 267 (5th Cir. 2014) ........... 33, 34, 35

*United States v. Beaumont*, 972 F.2d 553 (5th Cir. 1992) ................ 25, 26

*United States v. Bohuchot*, 625 F.3d 892 (5th Cir. 2010) ....................... 27

*United States v. Broussard*, 80 F.3d 1025 (5th Cir. 1996) .................... 68

*United States v. Brown*, 669 F.3d 10 (1st Cir. 2012) ........................ 24, 25

# <u>TABLE OF AUTHORITIES, cont'd</u>

**Cases**                                                               **Page(s)**

*United States v. Caravayo*, 809 F.3d 269 (5th Cir. 2015) ....................... 28

*United States v. Chapman*, 851 F.3d 363 (5th Cir. 2017) ............... 25, 26

*United States v. Cornett*, 195 F.3d 776 (5th Cir. 1999) .......................... 69

*United States v. Crook*, 479 F. App'x 568 (5th Cir. 2012)...................... 75

*United States v. Elam*, 678 F.2d 1234 (5th Cir. 1982)............................ 35

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011)...................... 69

*United States v. Escalante-Reyes*, 689 F.3d 415 (5th Cir. 2012)
    (en banc) ..................................................................................... 28

*United States v. Fairley*, 880 F.3d 198 (5th Cir. 2018)............... 59, 68, 69

*United States v. Flores*, 63 F.3d 1342 (5th Cir. 1995) ............................ 66

*United States v. Flournoy*, No. 92-8263, 1992 WL 386808
    (5th Cir. Dec. 23, 1992) (unpublished)......................................... 84

*United States v. Girod*, 646 F.3d 304 (5th Cir. 2011) ....................... 32, 38

*United States v. Green*, 47 F.4th 279 (5th Cir. 2022),
    *certs. denied*, 143 S. Ct. 747, 1058 (2023) ..................................... 28

*United States v. Griffin*, 800 F.3d 198 (5th Cir. 2015) ..................... 32, 38

*United States v. Grismore*, 564 F.2d 929 (10th Cir. 1977) .................... 42

*United States v. Gutierrez-Chavez*, 842 F.2d 77 (5th Cir. 1988) ............ 67

*United States v. Jordan*, 49 F.3d 152 (5th Cir. 1995)............................. 42

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                    **Page(s)**

*United States v. Jordan*, 952 F.3d 160 (4th Cir. 2020),
  *cert. denied,* 141 S. Ct. 1051 (2021)................................................67

*United States v. King*, 541 F.3d 1143 (5th Cir. 2008).............................66

*United States v. Loe*, 248 F.3d 449 (5th Cir. 2001).................................73

*United States v. Martinez-Perez*, 941 F.2d 295 (5th Cir. 1991)..............60

*United States v. McDonough*, 727 F.3d 143 (1st Cir. 2013) ...................72

*United States v. Mendoza-Gomez*, 69 F.4th 273 (5th Cir.), *cert. denied,*
  2023 WL 6558685 (U.S. Oct. 10, 2023) (No. 23-5512) .............77, 84

*United States v. Merkt*, 794 F.2d 950 (5th Cir. 1986).............................40

*United States v. Miller*, 471 U.S. 130 (1985) ...................................31, 32

*United States v. Morgan*, 117 F.3d 849 (5th Cir. 1997)..........................24

*United States v. Morrison*, 833 F.3d 491 (5th Cir. 2016) .......................26

*United States v. Olano*, 507 U.S. 725 (1993) ...................................27, 38

*United States v. Olguin*, 643 F.3d 384 (5th Cir. 2011) ...........................59

*United States v. Prince*, 868 F.2d 1379 (5th Cir. 1989) ..........................26

*United States v. Reed*, 908 F.3d 102 (5th Cir. 2018) ........................88, 90

*United States v. Reeves*, 892 F.2d 1223 (5th Cir. 1990)..........................72

*United States v. Richard*, 775 F.3d 287 (5th Cir. 2014) .........................82

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                        **Page(s)**

*United States v. Richerson*, 833 F.2d 1147 (5th Cir. 1987) ...................35

*United States v. Roussel*, 705 F.3d 184 (5th Cir. 2013).............77, 79, 82

*United States v. Sanjar*, 876 F.3d 725 (5th Cir. 2017) ..............85, 87, 88

*United States v. Scroggins*, 599 F.3d 433 (5th Cir. 2010) ......................25

*United States v. Shah*, 84 F.4th 190 (5th Cir. 2023) ............34, 35, 71, 74

*United States v. Shows Urquidi*, 71 F.4th 357 (5th Cir.), *cert. denied*,
    2023 WL 6378973 (U.S. Oct. 2, 2023) (No. 23-5334) ... 33, 34, 35, 36

*United States v. Stalnaker*, 571 F.3d 428 (5th Cir. 2009) ......................89

*United States v. Stanford*, 805 F.3d 557 (5th Cir. 2015).................28, 46

*United States v. Thames*, 214 F.3d 608 (5th Cir. 2000)..........................25

*United States v. Trevino-Chavez*, 830 F. App'x 425
    (5th Cir. 2020) ........................................................................59, 60

*Webb v. Texas*, 409 U.S. 95 (1972) ........................................................58

**Statutes and Rules**

18 U.S.C. § 666(a)(1)...............................................................................50

18 U.S.C. § 666(a)(1)(A)..........................................................................50

18 U.S.C. § 666(a)(2)................................................................17, 18, 50

18 U.S.C. § 981(a)(1)(C)...........................................................16, 90

## TABLE OF AUTHORITIES, cont'd

**Statutes and Rules**                                              **Page(s)**

18 U.S.C. § 1341 ................................................................. 47, 51

18 U.S.C. § 1343 ........................................................ 17, 18, 47, 50

18 U.S.C. § 1346 ................................................................. *passim*

18 U.S.C. § 1349 ..................................................................... 17, 18

18 U.S.C. § 1952 ........................................................................... 18

18 U.S.C. § 1956(a) ...................................................................... 18

18 U.S.C. § 1956(a)(1)(B)(i) ....................................................... 18

18 U.S.C. § 1956(a)(1)(B)(h) ...................................................... 18

18 U.S.C. § 3231 ............................................................................. 1

18 U.S.C. § 3663A(a)(1) .............................................................. 88

18 U.S.C. § 3664(h) ...................................................................... 88

18 U.S.C. § 3742(a) ........................................................................ 1

21 U.S.C. § 853(a)(1) .................................................................... 90

28 U.S.C. § 455(a) .......................................................... 16, 41, 42

28 U.S.C. § 1291 ............................................................................. 1

28 U.S.C. § 2461(e) ..................................................................... 16

Fed. R. App. P. 4(b)(1)(A) ............................................................. 1

# TABLE OF AUTHORITIES, cont'd

**Statutes and Rules**                                   **Page(s)**

Fed. R. App. P. 4(b)(2) ............................................................... 1

Fed. R. App. P. 10(b)(1) ........................................................... 86

Fed. R. App. P. 10(b)(2) ..................................................... 86, 87

Fed. R. App. P. 28(a)(8) ..................................................... 24, 89

Fed. R. App. P. 28(i) ......................................................... 24, 25

Fed. R. App. P. 34(a)(2)(C) ........................................................ i

Fed. R. Crim. P. 7(c)(1) .................................................... 47, 49

Fed. R. Crim. P. 16(b)(1)(A) .................................................... 75

Fed. R. Crim. P. 16(d)(2)(C) ................................................... 75

Fed. R. Crim. P. 32.2(b)(1) .................................................... 87

Fed. R. Crim. P. 32.2(c)(1) .................................................... 87

Fed. R. Crim. P. 35 .............................................................. 26

Fed. R. Crim. P. 36 .............................................................. 26

Fed. R. Evid. 401 ................................................................ 60

Fed. R. Evid. 402 ................................................................ 72

Fed. R. Evid. 403 ................................................................ 60

Fed. R. Evid. 602 ................................................................ 60

## <u>TABLE OF AUTHORITIES, cont'd</u>

**Statutes and Rules**                                          **Page(s)**

Fed. R. Evid. 611(a) ................................................................. 53

Fed. R. Evid. 801(c) ................................................................. 65

Fed. R. Evid. 801(d)(2)(A) ....................................................... 66

Fed. R. Evid. 801(d)(2)(E) ................................................ *passim*

Fed. R. Evid. 802 .................................................................... 60

5th Cir. R. 47.5.3 ................................................................... 84

## United States Sentencing Guidelines

USSG § 2B1.1(b)(1)(H) ............................................................. 82

USSG § 2B1.1(b)(1)(J) .............................................................. 81

USSG § 2C1.1 .................................................................... 78, 82

USSG § 2C1.1(a)(1) .................................................................. 78

USSG § 2C1.1(b)(2) .................................................................. 81

USSG § 2C1.1, cmt. n.1 ............................................................ 78

USSG § 3C1.1 .................................................................... 83, 84

USSG § 3C1.1, cmt. n.4(A) ....................................................... 83

USSG Ch. 5, Pt. A .................................................................... 19

## STATEMENT OF JURISDICTION

This appeal is from a prosecution of federal offenses. The district court (Alvarez, J.) had jurisdiction under 18 U.S.C. § 3231. The judgments against Ricardo Quintanilla and Arturo C. Cuellar, Jr. (hereinafter Arturo Cuellar) were imposed on January 18, 2023, and entered on February 9, 2023. ROA.23-40033.4289; ROA.23-40068.4524. Quintanilla filed a notice of appeal on January 19, 2023. ROA.23-40033.4253. Arturo Cuellar filed a notice of appeal on January 29, 2023, and an amended notice of appeal on January 30, 2023. ROA.23-40068.4445, 4483. Defendants' notices of appeal are timely. *See* Fed. R. App. P. 4(b)(1)(A), (b)(2). This Court has jurisdiction over the appeals under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

I. Whether the constructive amendment claims are waived or otherwise fail under plain-error review.

II. Whether the district court acted within its discretion in denying Arturo Cuellar's recusal motion. Whether his recusal arguments raised for the first time on appeal fail under plain-error review.

III.   Whether the challenges to the sufficiency of the superseding indictment on the honest-services wire fraud counts (Counts 1, 2, 5-7) fail under plain-error review.

IV.   Whether Arturo Cuellar has failed to show that the district court improperly chilled a defense witness's testimony.

V.   Whether Quintanilla's Confrontation Clause challenges to coconspirator statements fail because the statements were nontestimonial. Whether the district court acted within its discretion in admitting coconspirator recordings under the coconspirator rule, Fed. R. Evid. 801(d)(2)(E).

VI.   Whether the district court acted within its discretion in excluding (A) a defense expert's testimony regarding the propriety of the contracts because it was irrelevant, and (B) privileged emails withheld in violation of discovery rules.

VII.   & IX. Whether the district court's sentencing findings regarding Arturo Cuellar's base offense level and value of payment and Quintanilla's obstruction of justice are plausible considering the record.

VIII. Whether Arturo Cuellar's challenge to his $947,454 money judgment is waived for inadequate briefing or fails under plain-error review.

## STATEMENT OF THE CASE

### *Introduction*

This case involved a scheme to bribe city commissioners in Weslaco, Texas to award city contracts regarding water and wastewater treatment plants to engineering firms Camp Dresser and McKee (CDM), Briones, and Briones's onsite representative LeFevre. As part of the scheme, Quintanilla bribed Commissioner Gerardo Tafolla and Arturo Cuellar bribed Commissioner John Cuellar for their official actions in favor of the companies. The companies paid Leo Lopez, who in turn paid Defendants for the bribes.

A.     Facts Established at Trial.

### *City Commissioners*

The Weslaco City Commissioners took an oath of office to faithfully execute the duties of the office and to preserve, protect, and defend the federal and state constitutions and laws. ROA.23-40068.402-04, 1547. John Cuellar, a licensed attorney, served as a city commissioner from

1995 to 2014, which included time as mayor pro tem, a commissioner who presides at meetings in the mayor's absence. ROA.23-40068.398-400, 857-59. Due to his longevity and institutional knowledge, John Cuellar was an influential city commissioner. ROA.23-40068.400. His first cousin is Arturo Cuellar. ROA.23-40068.862.

Gerardo Tafolla also served as a city commissioner. ROA.23-40068.401. Tafolla ran unsuccessfully for the commission in 2008 but was successful a year later; Quintanilla was his campaign manager and treasurer for both campaigns. ROA.23-40068.1542-45.

The priorities for Weslaco were improving its wastewater treatment plants and water treatment plant (WTP). ROA.23-40068.453, 1546. Prior to 2010, the city became aware of problems with its water treatment facilities. ROA.23-40068.859-60. The city considered presentations to design and build a new WTP and awarded contracts for the design and build of the plant. ROA.23-40068.861.

*Arturo Cuellar Bribed Commissioner John Cuellar to Vote in Favor of CDM and Briones.*

When John Cuellar was a commissioner, Arturo Cuellar paid him bribes by check. ROA.23-40068.862. The checks came from Quality Ready Mix (QRM), one of Arturo Cuellar's companies. ROA.23-40068.862. From

2011 to 2014, Arturo Cuellar paid John Cuellar $405,000 through QRM. ROA.23-40068.863, 2773-76. Except for four payments in 2011 that were each $7,500, John Cuellar received two $5,000 checks every month, for a total of $10,000 monthly. ROA.23-40068.863, 954, 960, 2774-75. The last check was for $5,000 on November 6, 2014, the month he lost reelection to the commission. ROA.23-40068.867, 2775-76.

In exchange for the money, John Cuellar agreed to vote for Briones to serve as the engineer to design the WTP, and to vote for CDM to serve as the construction company to build the WTP. ROA.23-40068.863-64, 873. From his communications with Arturo Cuellar, John Cuellar understood the payments as bribes for the votes. ROA.23-40068.864.

As a cover story, Arturo Cuellar, John Cuellar, and Leo Lopez agreed they would say John Cuellar was legal counsel for QRM, when he was not. ROA.23-40068.863, 869, 871-74. Lopez acted on behalf of CDM and Briones. ROA.23-40068.864-65. Lopez told John Cuellar he was going to split his "consultant fees" with Arturo Cuellar. ROA.23-40068.869. John Cuellar did not perform any legal work for QRM. ROA.23-40068.871, 955, 958. Indeed, QRM had its own legal counsel, Robert Ramey. ROA.23-40068.951-53.

### *Quintanilla Bribed Commissioner Tafolla to Vote in Favor of CDM and Briones.*

Tafolla testified about three meetings leading up to Quintanilla's payment of bribes to Tafolla:

*Meeting #1.* After Tafolla was sworn in as a commissioner in May 2009, Quintanilla introduced Tafolla to Lopez. ROA.23-40068.1549-50, 1915.

*Meeting #2.* About six to 12 months after Tafolla won election, Tafolla, Quintanilla, and Lopez met at a restaurant, where they discussed "mending fences" with Arturo Cuellar. ROA.23-40068.1550-51. Arturo Cuellar had supported Tafolla's opponent in both campaigns. ROA.23-40068.1543-44.

*Meeting #3.* About a month after the second meeting, Tafolla, Quintanilla, Lopez, and Arturo Cuellar met at Cimarron Country Club in Mission, Texas. ROA.23-40068.1552, 1916. Arturo Cuellar was a Hidalgo County Commissioner at the time. ROA.23-40068.1553. The purpose of the meeting was to talk about the votes. ROA.23-40068.1915. The meeting occurred after a January 18, 2011, vote to approve CDM's preparation of a preliminary engineering report. ROA.23-40068.1557.

Lopez spoke about the wastewater plant or water plant, one of the projects he needed to get done. ROA.23-40068.1554-55. He primarily talked to Quintanilla. ROA.23-40068.1554-55. Lopez needed the votes for the WTP. ROA.23-40068.1555-56. Lopez mentioned Briones and CDM. ROA.23-40068.1557.

On the drive home from the third meeting, Tafolla told Quintanilla he was already going to vote for the project. ROA.23-40068.1558, 1919. Quintanilla told Tafolla that if he voted in favor of the project, Quintanilla would give Tafolla half of whatever Lopez gave Quintanilla. ROA.23-40068.1559. Tafolla agreed to accept the bribes from Quintanilla. ROA.23-40068.1559.

Tafolla received envelopes with mostly $1,000; Tafolla saw Lopez give the envelopes to Quintanilla, who would then give Tafolla half. ROA.23-40068.1561-62, 1564. Sometimes the envelopes contained cash, sometimes checks. ROA.23-40068.1562. Tafolla received payment about 12 times or so and he received more than $10,000, but less than $15,000 from Quintanilla. ROA.23-40068.1562-63.

Tafolla had discussions with Lopez or Quintanilla about his votes in favor of Briones and the South Wastewater Treatment Plant

(SWWTP). ROA.23-40068.1565. The discussions occurred every two or three months and Briones and CDM would be mentioned. ROA.23-40068.1566.

Tafolla voted in favor of granting the design contract for the SWWTP to Briones. ROA.23-40068.1566. When the WTP issue came up for a vote, Tafolla voted in favor of Briones and CDM. ROA.23-40068.1567.

### *City Commission Meetings*

In several commission meetings in 2008, John Cuellar voted to award engineering contracts regarding the North Wastewater Treatment Plant to CDM. ROA.23-40068.411-16, 425-29. In 2010, CDM (or its affiliated entity CCI) was hired to build a new WTP. ROA.23-40068.446, 861. Rolando Briones of Briones Consulting and Engineering was selected to design the plant and oversee its construction. ROA.23-40068.862. Later, Briones Engineering retained Richard LeFevre of LeFevre Environmental Management and Consulting as the owner's onsite representative at the WTP. ROA.23-40068.406-07, 464.

On January 18, 2011, John Cuellar and Tafolla voted to authorize that CDM prepare a preliminary engineering report on the WTP.

ROA.23-40068.435-37. On August 16, 2011, John Cuellar moved that the commission approve and accept CDM's preliminary engineering report, and Tafolla seconded the motion. ROA.23-40068.438-40. CDM estimated the water treatment project would cost $17 million. ROA.23-40068.439. Tafolla moved to declare the WTP an imminent threat to public safety, which allowed the project to be exempt from a normal public bidding process. ROA.23-40068.440-41. John Cuellar and Tafolla voted in favor, and it passed. ROA.23-40068.441.

On September 8, 2011, John Cuellar moved to approve the preliminary engineering report, which showed the WTP would cost $41.8 million. ROA.23-40068.441-43. John Cuellar and Tafolla voted in favor, and it passed. ROA.23-40068.443. Tafolla moved to authorize the city manager to negotiate a contract with Briones to design the WTP expansion. ROA.23-40068.443-44. John Cuellar and Tafolla voted in favor, and it passed. ROA.23-40068.444.

On October 6, 2011, Tafolla seconded a motion to approve a professional services contract with Briones; Tafolla voted in favor. ROA.23-40068.445. Tafolla moved for approval of a professional services agreement for pre-construction services for CDM for the WTP. ROA.23-

40068.446-47. Tafolla voted in favor. ROA.23-40068.447. The city approved professional services agreements with Briones and CDM. ROA.23-40068.447.

On March 27, 2012, Tafolla moved that the commission assign a guaranteed maximum price of $43.3 million for CDM's work on the WTP extension. ROA.23-40068.447-49. The commission approved an amount of $38.5 million, which did not include the cost for Briones to design the plant. ROA.23-40068.448-49. John Cuellar and Tafolla voted in favor. ROA.23-40068.449.

On June 5, 2012, Tafolla seconded a motion to approve a professional services agreement with LeFevre's firm for managing, planning, inspection, and engineering services. ROA.23-40068.449-50. John Cuellar and Tafolla voted in favor, and it passed. ROA.23-40068.450.

On September 20, 2012, Tafolla moved to amend the agreement with Briones to include automation of the WTP, at a cost not to exceed $2,978,950. ROA.23-40068.451-52. John Cuellar and Tafolla voted in favor, and it passed. ROA.23-40068.452.

On July 16, 2013, Tafolla moved to amend the professional engineering services contract with Briones for the WTP to include a preliminary engineering report for the SWWTP. ROA.23-40068.452-54. John Cuellar and Tafolla voted in favor, and it passed. ROA.23-40068.454.

On September 2, 2014, John Cuellar moved to approve the preliminary engineering report for the SWWTP. ROA.23-40068.454-55. Tafolla seconded the motion and it passed. ROA.23-40068.455.

### Coconspirators' Correspondence with Lopez

On July 3, 2012, Lopez emailed Rolando Briones an invoice for consulting fees for February to May 2012. ROA.23-40068.2499, 2503-04, 6075-76.

In September and December 2012, LeFevre emailed Lopez invoices from LeFevre's firm to Briones Engineering regarding work on the "Weslaco Wastewater Treatment Project." ROA.23-40068.2500, 2504-05, 6079-80, 6082-83.

On November 6, 2012, LeFevre emailed Lopez with the subject "proposal" and said "We need to do this. It will protect us. Call me." ROA.23-40068.2488-89, 4669. The email contained an attachment, dated

January 1, 2012, which was a proposal for marketing and consulting services by LeFevre's firm. ROA.23-40068.2488-89, 4670-71. The agreement had not been signed by Lopez, but there was a place for his signature, dated January 1, 2012, predating the email. ROA.23-40068.2489, 4671.

On October 25, 2013, Briones emailed Lopez regarding the SWWTP including an agreement regarding the engineer's scope of work. ROA.23-40068.2501, 2506, 6084-87.

On December 3, 2014, Briones forwarded an email to Lopez with the WTP final invoice, which had been emailed from LeFevre to Briones with copies to the City of Weslaco. ROA.23-40068.2501, 2507, 6092.

In 2016, Quintanilla and Lopez exchanged text messages about commission agendas and minutes, and on February 2, 2016, exchanged texts about the percentages Briones and CCI (CDM-affiliated company) were paid and whether David Salinas at the City could authorize the contracts. ROA.23-40068.446, 2489, 2497-98, 4672-83.

Briones and Lopez also exchanged text messages, including January 30, 2016, texts, which were the same as the February 2, 2016, texts between Quintanilla and Lopez. ROA.23-40068.2494-98, 4684-94.

*Briones's Emails to the City Regarding the City Contracts*

On April 25, 2014, Briones sent an email to David Salinas, the City public utilities director, and Leo Olivares, the City Manager, regarding amendments to the contracts for the SWWTP and the WTP. ROA.23-40068.457, 5967-68.

In response, on May 2, 2014, City Secretary Elizabeth Walker sent an email to Briones and Salinas, and copied Olivares and City Attorney Ramon Vela, asking Briones to transmit all executed amendments to the contracts for the WTP or wastewater treatment plant. ROA.23-40068.457-59, 5967.

On September 2, 2015, an employee of Briones Engineering sent an email to Salinas, copying Briones, containing a monthly status report for August 2015 of work on the WTP. ROA.23-40068.462-63, 5969-6017.

On October 5, 2015, an employee of Briones Engineering sent an email to Salinas, copying Briones, containing a monthly status report for September 2015 of work on the WTP. ROA.23-40068.463, 6018-70.

On December 21, 2015, an employee of Briones Engineering sent an email to a city employee, copying Walker and Briones, submitting invoices for work conducted on the WTP. ROA.23-40068.2502-03, 6071-

74. Shortly thereafter, Briones forwarded the email and attachments to Lopez. ROA.23-40068.2499, 2502-03, 6071.

*The City's Payments to CDM, Briones, and LeFevre*

The City paid CDM, Briones, and LeFevre a total of $42,531,081.41 on the contracts regarding the WTP and wastewater treatment plants. From March 2008 to December 2016, the city paid CDM $33,877,747.90. ROA.23-40068.2736-37, 2756. The city paid Briones $8,506,438.51 and LeFevre $146,895.17. ROA.23-40068.2737, 2755, 2757.

*Lopez Paid Defendants for Bribing*
*Commissioners Tafolla and John Cuellar.*

The money for the bribes flowed as follows. CDM paid Briones. ROA.23-40068.2455. Briones paid Lopez, or Briones paid LeFevre, who paid Lopez. ROA.23-40068.2434-36, 2455. Lopez paid Defendants. ROA.23-40068.2437, 2455.

From March 2008 to December 2016, funds went back and forth between Briones and CDM; Briones paid CDM $6,775,112.08 (net amount). ROA.23-40068.2736, 2738-39, 2758-59. Briones paid LeFevre $1,908,006.71. ROA.23-40068.2737, 2759. Briones and LeFevre paid Lopez a total of $4,117,364: Lopez received $2,192,364.35 from Briones;

$300,000 from Briones to Lopez's company (LB Ranch); and $1,625,000 from LeFevre. ROA.23-40068.2739-41, 2760-61, 2765.

Lopez paid Quintanilla a total of $93,930 in checks. ROA.23-40068.2742-45, 2779-82. The last check was in October 2014. ROA.23-40068.2782. Lopez paid Arturo Cuellar a total of $1,398,000 in checks. ROA.23-40068.2742, 2766, 2775. The last check was on November 24, 2014. ROA.23-40068.2775.

### Quintanilla Attempted to Obstruct Justice

In 2015, Juan Gonzalez became the City Attorney for Weslaco. ROA.23-40068.988, 999. Gonzalez knew Quintanilla, who is the uncle to Gonzalez's son-in-law. ROA.23-40068.989.

While this case was pending trial, Quintanilla came to Gonzalez's office unannounced at 6:15 a.m. (Gonzalez had arrived at 6 a.m.) and told Gonzalez he wanted him to testify at trial that he had hired Quintanilla as a consultant. ROA.23-40068.993-94. Gonzalez refused and told Quintanilla to have his lawyer call him. ROA.23-40068.994. Quintanilla did not like the response. ROA.23-40068.994.

Quintanilla left but returned a few minutes later and said, "you better not fuck this up for me." ROA.23-40068.994. Gonzalez told

Quintanilla to have his lawyer call him. ROA.23-40068.995. Quintanilla finally left about 6:30 a.m.; Gonzalez waited 30 minutes and called the prosecutor. ROA.23-40068.998-99. Gonzalez never paid Quintanilla to be a consultant. ROA.23-40068.995. Gonzalez testified, "he is not a consultant. I mean, I feel strongly about that." ROA.23-40068.1015.

B.    Procedural History.

The operative superseding indictment charged Quintanilla, John Cuellar, and Arturo Cuellar with federal offenses regarding the scheme to pay bribes to city commissioners to award city contracts to specific companies. ROA.23-40068.4200-33, 4307-40 (redacted copy). The superseding indictment included a notice of criminal forfeiture of $4.1 million and noted the Government may seek the imposition of a money judgment. ROA.23-40068.4232-33. *See* 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(e).

About one month after the filing of the superseding indictment, Arturo Cuellar filed a motion to recuse the district judge under 28 U.S.C. § 455(a) and the Due Process Clause. ROA.23-40068.3914. Arturo Cuellar asserted detailed facts in the motion about an automobile accident that

occurred almost four years earlier. *See* ROA.23-40068.3915. The court

denied the motion in a detailed nine-page order. ROA.23-40068.3982-90.

Days before trial, the Government narrowed the superseding

indictment, with Defendants' agreement, by abandoning surplusage and

shortening alleged time periods. ROA.23-40068.245-46, 4234-35.

John Cuellar, a city commissioner who accepted bribes, pleaded

guilty to conspiracy to commit theft of honest services by wire fraud and

testified at Defendants' trial. ROA.23-40068.879. Tafolla, another city

commissioner who accepted bribes, pleaded guilty to bribery charged in

a separate information and testified at Defendants' trial. ROA.23-

40068.1536, 1602, 3765 (¶ 19).

After an eight-day trial, the jury convicted Quintanilla of 15 counts

regarding honest-services wire fraud, federal program bribery, and

money laundering:

- *Honest-Services Wire Fraud.* One count of conspiracy to commit honest-services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, 1349 (count 1); and four counts of honest-services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346 (counts 2, 5, 6, 7);

- *Federal Program Bribery.* One count of federal program bribery, in violation of 18 U.S.C. § 666(a)(2) (count 8); and,

- *Money Laundering.* One count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h) (count 11); and eight counts of money laundering, in violation of 18 U.S.C. § 1956(a) (counts 12-19).

ROA.23-40068.4271-4306.

The jury convicted Arturo Cuellar of 61 counts regarding honest-services wire fraud, federal program bribery, money laundering, and the Travel Act:

- *Honest-Services Wire Fraud.* One count of conspiracy to commit honest-services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, 1349 (count 1); and four counts of honest-services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346 (counts 2, 5, 6, 7);

- *Federal Program Bribery.* One count of federal program bribery, in violation of 18 U.S.C. § 666(a)(2) (count 9);

- *Money Laundering.* One count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h) (count 11); and twenty-seven counts of money laundering, in violation of 18 U.S.C. § 1956(a) (counts 20-46); and,

- *Travel Act.* Twenty-seven counts of Travel Act offenses, in violation of 18 U.S.C. § 1952 (counts 48-74).

ROA.23-40068.4271-4306.

At sentencing, the court determined Defendants' total offense level to be 40 and each criminal history category to be I. ROA.23-40068.3721. The resulting guideline range was 292 to 365 months, subject to the

statutory maxima of 240, 120, or 60 months. ROA.23-40033.6538; ROA.23-40068.3798; *see* USSG Ch. 5, Pt. A (Sentencing Table). The court imposed a downward variance as to Defendants, but less so for Arturo Cuellar, who profited more than Quintanilla. ROA.23-40068.3728-29.

The court sentenced Quintanilla to serve a total of 200 months in the custody of the Bureau of Prisons: 120 months on count 8 (federal program bribery) and 200 months on each of the remaining counts, all to run concurrently. ROA.23-40033.4289-91. The prison term is followed by a two-year supervised release term. ROA.23-40033.4292. Quintanilla was ordered to pay a $1,500 special assessment, a $15,000 fine, and $4.1 million in restitution to the City of Weslaco jointly and severally with Arturo Cuellar and John Cuellar. ROA.23-40033.4293-94. As to Quintanilla, the court ordered forfeiture of $75,080 in the form of a money judgment. ROA.23-40033.3748, 4242-43.

The court sentenced Arturo Cuellar to serve a total of 240 months in the Custody of the Bureau of Prisons: 60 months on the Travel Act counts; 120 months on count 9 (federal program bribery); and 240 months on each of the remaining counts, all to run concurrently. ROA.23-40068.4524-26. The prison term is followed by a two-year supervised

release term. ROA.23-40068.4527. Arturo Cuellar was ordered to pay a $6,100 special assessment, a $915,000 fine, and $4.1 million in restitution to the City of Weslaco jointly and severally with Quintanilla and John Cuellar. ROA.23-40068.4528-29. As to Arturo Cuellar, the court ordered forfeiture of $947,454 in the form of a money judgment. ROA.23-40068.3731, 4356-57.

## SUMMARY OF THE ARGUMENT

I.     The constructive amendment claims are waived or otherwise fail under plain-error review. The evidence showed a single conspiracy, as alleged in the superseding indictment. The challenge to the changes in the superseding indictment are waived because Defendants agreed to those changes. Moreover, there is no constructive amendment because the changes narrowed the superseding indictment. Arturo Cuellar did not have to be a public official because John Cuellar and Tafolla were public officials for purposes of honest-services wire fraud.

II.    The district court acted within its discretion in denying Arturo Cuellar's recusal motion. The recusal motion was based on a state court settlement of a traffic accident involving the judge in her personal capacity and an employee of one of Arturo Cuellar's companies. The nine-

page order denying the motion contains a detailed factual and legal analysis about the traffic accident and state court settlement, neither of which personally involved Arturo Cuellar. Arturo Cuellar failed to show a reasonable person who knew all the circumstances would harbor doubts about the judge's impartiality.

III.   The challenges to the sufficiency of the superseding indictment on honest-services wire fraud (Counts 1, 2, 5-7) fail under plain-error review. The superseding indictment properly alleged crimes under 18 U.S.C. § 1346. Defendants' crimes involved bribery in connection with honest services and thus fell within the core of honest-services fraud.

IV.   Arturo Cuellar has failed to show that the district court improperly chilled a defense witness's testimony. The court properly briefly admonished AC III, a co-owner of QRM, that his testimony about QRM's taxes might expose him to liability with the IRS. Contrary to Arturo Cuellar's gross mischaracterizations of the record, the admonition did not occur in open court, but at the bench while the jury was outside the courtroom and the court did not Mirandize AC III. The court did not discourage AC III from testifying. Indeed, after he consulted with counsel, he continued testifying.

V.    Quintanilla's Confrontation Clause challenges to coconspirator statements fail because the statements were nontestimonial. Neither Lopez's statements on recordings nor LeFevre's "beached whale" comment were offered for the truth of the matters asserted. The recordings were properly admitted as coconspirator statements, which are not hearsay.

VI.    (A). The district court acted within its discretion in excluding purported defense expert John Shaw's testimony regarding the propriety of the contracts because it was irrelevant. It is not a defense to bribery that the actions sought to be influenced were desirable or beneficial to the public.

(B). The district court properly excluded emails between J-III and its attorney that were inadmissible under J-III's attorney-client privilege and that were withheld in violation of discovery rules. Arturo Cuellar has not identified the content of the emails or explained how the admission of the emails would have countered evidence that he paid John Cuellar $405,000 for bribes, and that John Cuellar performed no legal work for QRM.

VII. & IX. The district court's sentencing findings regarding Arturo Cuellar's base offense level and value of payment and Quintanilla's obstruction of justice were not clearly erroneous. Arturo Cuellar undisputedly was a public official, resulting in a base offense level 14, and the guideline does not require that his status have a nexus to the crimes. The value of payment properly was based on the $4.1 million Lopez received for the bribes, which he distributed to Defendants and coconspirators. Quintanilla attempted to obstruct justice by attempting to influence Juan Gonzalez's testimony.

VIII. Arturo Cuellar's challenge to his $947,454 money judgment is waived for inadequate briefing or fails under plain-error review. Regarding waiver, the money judgment was determined at a forfeiture hearing, but he did not include that transcript in the record, and his briefing on this issue is multifarious, vague, and conclusory. In any event, the issue fails under plain-error review because, contrary to his claims, the court did not impose the money judgment under joint and several liability.

# ARGUMENT

## *Preface*

Parties "may join in a brief" or "adopt by reference a part of another's brief." Fed. R. App. P. 28(i). But Rule 28(i) has limits. They cannot adopt challenges that are fact-specific to a particular defendant, such as challenges to the sufficiency of the evidence or application of the Sentencing Guidelines. *United States v. Morgan*, 117 F.3d 849, 853 (5th Cir. 1997); *United States v. Alix*, 86 F.3d 429, 434 n.2 (5th Cir. 1996).

Here, Defendants did not file separate briefs with express adoptions by reference of arguments in the other's brief, and they did not cite Rule 28(i). Instead, they filed a joint brief without explaining which arguments factually and legally apply to Quintanilla and which arguments apply to Arturo Cuellar or why an argument applies equally to both. *See* Fed. R. App. P. 28(a)(8) (appellant's brief must contain an argument section with specific contentions and reasons, citations to authorities and the record, and the applicable standard of review); *see also United States v. Brown*, 669 F.3d 10, 16 n.5 (1st Cir. 2012) ("Adoption by reference cannot occur in a vacuum and the arguments must actually be transferable from the proponent's to the adopter's case").

In the context of adoption under Rule 28(i), "issues that are averted to in a perfunctory manner absent developed argumentation are waived." *Brown*, 669 F.3d at 16 n.5. Defendants' joint brief contains multifarious, vague, and conclusory arguments. The Government and this Court are left to guess as to how the collective arguments apply to each factual situation. Consequently, most of the arguments in the joint brief were not properly adopted under Rule 28(i).

In addition, arguments raised in a conclusory manner or otherwise not properly briefed in the Argument section of the principal brief are waived on appeal. *E.g., United States v. Chapman*, 851 F.3d 363, 375 n.9 (5th Cir. 2017); *United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010). For example, Defendants summarily assert in their summary of the argument, Br. 3, that the evidence was insufficient to prove their guilt beyond a reasonable doubt. They "fail[], however, to make *any argument whatsoever* to support this contention." *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) (emphasis in original). They do not formally raise a sufficiency challenge on any of their combined 76 counts in the argument section of their joint brief. *See United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000) (assertions raised only in the summary

of the argument were waived). Any sufficiency challenge is thus waived for inadequate briefing. *See, e.g., Chapman*, 851 F.3d at 375 n.9; *United States v. Morrison*, 833 F.3d 491, 499 (5th Cir. 2016); *Beaumont*, 972 F.2d at 563. Moreover, issues cannot be raised for the first time in a reply brief. *See, e.g., Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023); *United States v. Prince*, 868 F.2d 1379, 1386 (5th Cir. 1989).

Defendants' brief is rife with blatant mischaracterizations of the record, too numerous for the Government to identify individually. Some mischaracterizations improperly form the basis for entire issues, e.g., Issue IV. Other mischaracterizations appear as asides to issues.[3]

---

[3] For instance, in Issue II, regarding recusal, Defendants state that the court "allowed the Government to submit late sentencing objections without serving them on defense counsel and resentenced [Arturo Cuellar] after he was already in custody and outside his lawyers' presence over his counsel's objection." Br. 21-22 (citing ROA.23-40068.4435-38). Defendants provide no record citation for the first part of the claim that the Government submitted late objections and did not serve Arturo Cuellar. Regarding the alleged resentencing, Defendants cite Arturo Cuellar's "notice of change in counsel" in which his appellate counsel stated they were under an impression that another sentencing hearing would occur, but they had not received notice of it. ROA.23-40068.4435. The record does not reflect another sentencing hearing. Rather, the day after sentencing, the court issued a written order to correct an oversight regarding the sentences on individual counts. ROA.23-40068.4439 (citing Fed. R. Crim. P. 35, 36). The correction did not change the overall sentences that had been pronounced at sentencing and the court noted that Defendants need not be present for the written correction. ROA.23-40068.4439. Defendants do not challenge the correction, and it is unclear why the point was included in an issue about recusal.

In short, Defendants' issues are inadequately briefed, waived, and based on mischaracterizations of the record. With these points in mind, the Government responds to the issues.

### I. The constructive amendment claims are waived or otherwise fail under plain-error review.

A.     <u>Standard of Review</u>

For the first time on appeal, Defendants allege a constructive amendment of the superseding indictment regarding proof of a single conspiracy and changes to the superseding indictment that removed surplusage and narrowed dates. Arturo Cuellar additionally alleges, also for the first time on appeal, a constructive amendment regarding proof of a public official.

The challenge to the changes to the superseding indictment is waived, as explained below. Contrary to Defendants' claim, *see* Br. 5-6, the other arguments are not subject to de novo review or automatic reversal. After *United States v. Olano*, 507 U.S. 725 (1993), a constructive amendment, if occurred, is not reversible per se. *United States v. Bohuchot*, 625 F.3d 892, 897 (5th Cir. 2010). Rather, the plain-error standard applies. *Id.*; *see* Br. 9.

To obtain relief, Defendants must show four prongs: (1) an error; (2) that is clear or obvious; (3) that affects their substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See, e.g., United States v. Stanford*, 805 F.3d 557, 566 (5th Cir. 2015).

Defendants perfunctorily assert the alleged error affected substantial rights because they were "convicted on charges for which no evidence was presented" and thus the error affects the fourth prong. Br. 16. But the fourth prong is not automatic if the other three prongs are met. *United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc). Their failure to "meaningfully address all four prongs of plain-error review" is reason alone to reject their challenges. *United States v. Green*, 47 F.4th 279, 289 (5th Cir. 2022), *certs. denied*, 143 S. Ct. 747, 1058 (2023); *see United States v. Caravayo*, 809 F.3d 269, 273-74 (5th Cir. 2015) (noting that the complaining party has the burden to establish the fourth prong and that this Court has declined to correct plain errors when the complaining party fails to argue the fourth prong).

B.   <u>Relevant Facts</u>

The superseding indictment was filed on April 9, 2019. ROA.23-40068.4200. Daniel Garcia was charged as the fourth defendant. ROA.23-40068.4200-33. Garcia, an attorney and school board trustee, allegedly assisted Leo Lopez and Arturo Cuellar in providing $90,000 in bribe payments to John Cuellar through Garcia's law practice and IOLTA account. ROA.23-40068.4200-33.

On February 9, 2021, a separate indictment against Lopez was dismissed due to his death. ROA.23-40068.11006-09.

On December 28, 2021, the Government moved to dismiss the charges against Garcia, and the court granted the motion the next day. ROA.23-40068.201 (prosecutor orally stating intent to move for dismissal).[4]

At a status conference on October 7, 2022, Defendants stated they had been speaking with the prosecutor about removing surplusage pertaining to Garcia and narrowing the superseding indictment. ROA.23-40068.245-46. Arturo Cuellar stated they would "continue to have a

---

[4] The written dismissal motion and order are in the district court docket as ECF Nos. 330 and 332, but they are not included in this record.

dialogue with the Government." ROA.23-40068.245-46. The prosecutor stated some edits were made because Garcia was no longer a defendant. ROA.23-40068.246. The prosecutor said they would "exchange notices and try to get some agreements" regarding the additional narrowing of the superseding indictment. ROA.23-40068.246.

On October 10, 2022, the day before trial, the prosecutor filed a notice of intent to abandon surplusage and shorten time periods in the superseding indictment. ROA.23-40068.4234-35. The operative superseding indictment contains red strikeouts for allegations and counts regarding Garcia and narrowed the time frame of the allegations. ROA.23-40068.4200-33. Previously, the alleged dates for the offenses were as follows: (1) the conspiracy, March 2008 to December 2016; (2) Quintanilla's bribery (count 8), August 2011 to November 2014; and (3) Arturo Cuellar's bribery (count 9), March 2008 to November 2014. ROA.23-40068.4200-4233. The dates of the offenses narrowed to 2011 to 2016 for the conspiracy; and October 1, 2013, to September 30, 2014, for each bribery count. ROA.23-40068.4200-33.

On the morning of October 11, 2022, the first day of trial, the Government noted it had filed a notice of intent to narrow the

superseding indictment. ROA.23-40068.277. The court stated it had seen it. ROA.23-40068.277. Neither Quintanilla nor Arturo Cuellar expressed any problems with it. The jury had a redacted copy of the superseding indictment in which the strikethroughs and dismissed counts are blacked out. ROA.23-40068.4307-40.

C.    <u>General Principles</u>.

The Fifth Amendment guarantees a defendant the "right to be tried only on a grand jury indictment." *United States v. Miller*, 471 U.S. 130, 134 (1985). In *Stirone v. United States*, 361 U.S. 212 (1960), the indictment charged a Hobbs Act violation by interstate importation of sand, but the evidence was broadened to include proof of interstate exportation of steel. 361 U.S. at 213-14. Over defense objection, the jury was allowed to convict on either ground. *Id.* at 214. The conviction was reversed because the evidence broadened the charges in the indictment, and only a grand jury can broaden an indictment. *Id.* at 215-16; *Miller*, 471 U.S. at 138.

A constructive amendment occurs when the jury is permitted to convict upon "a basis broader than that charged in the indictment, or when the government is allowed to prove 'an essential element of the

crime on an alternative basis permitted by the statute but not charged in the indictment.'" *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011).[5] "But if 'the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.'" *United States v. Griffin*, 800 F.3d 198, 202 (5th Cir. 2015) (quoting *Miller*, 471 U.S. at 136).

"In other words, the key inquiry is whether the jury charge *broadened* the indictment; if it only *narrowed* the indictment, no constructive amendment occurred." *Id.* Consequently, eliminating a portion of the indictment from the jury's consideration or eliminating surplusage from the indictment is not a constructive amendment. *Id.*

D.   Single Conspiracy.

For the first time on appeal, Defendants contend a constructive amendment occurred because the superseding indictment alleged a single conspiracy, but the evidence, they claim, showed either no

---

[5] If the evidence does not modify an essential element of the charged offense, but nevertheless depicts a scenario materially different from that alleged in the indictment, a variance occurs. *Girod*, 646 F.3d at 316. Defendants do not contend a material variance occurred.

conspiracy or two separate conspiracies. Br. 6-7. Although they cast their claim in terms of a purported constructive amendment of the superseding indictment, the challenge is usually raised as an alleged material variance. *See, e.g., United States v. Shows Urquidi*, 71 F.4th 357, 381 (5th Cir. 2023) ("a material variance occurs when evidence presented at trial proved multiple conspiracies, while the indictment alleged only a single conspiracy"), *cert. denied*, 2023 WL 6378973 (U.S. Oct. 2, 2023) (No. 23-5334). "The question of whether the evidence establishes the existence of a single conspiracy or multiple conspiracies is a question of fact for the jury." *Id.* (quoting *United States v. Beacham*, 774 F.3d 267, 273 (5th Cir. 2014)). Regardless of how the claim is characterized, and despite Defendants' citations to isolated portions of the record, taken out of context, the evidence in its entirety showed a single conspiracy.

The Government proved the conspiracy through, among other evidence, testimony of John Cuellar and Tafolla, both of whom testified that the payments–effected through Defendants–were bribe payments made to influence their votes as city commissioners to award contracts for the WTP and wastewater treatment plants to CDM and Briones. Their testimony was corroborated by several types of documentary

evidence, including financial records, emails, text messages, and a lack of records showing a legitimate business relationship among the conspirators.

In counting the number of conspiracies, this Court considers "(1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *United States v. Shah*, 84 F.4th 190, 223 (5th Cir. 2023); *Shows Urquidi*, 71 F.4th at 381.

First, the existence of a common goal is interpreted broadly. *Shah*, 84 F.4th at 223. The conspiracy's common goal here was to bribe city commissioners to vote for CDM and Briones regarding the WTP and wastewater treatment plant contracts. As part of the common goal, Lopez paid Quintanilla to bribe Tafolla, and Lopez paid Arturo Cuellar to bribe John Cuellar. Defendants and their coconspirators also shared the common goal of deriving personal financial gain through their illegal venture. *See* ROA.23-40068.4205 (noting a purpose of the conspiracy was for Defendants and their coconspirators to enrich themselves); *Shows Urquidi*, 71 F.4th at 381; *Beacham*, 774 F.3d at 273.

"Second, in considering the nature of the scheme, a single conspiracy 'will be inferred where the activities of one aspect of the

scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture.'" *Beacham*, 774 F.3d at 274. The existence of a single conspiracy also will be inferred "where there are several parts inherent in a larger common plan." *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982).

Elizabeth Walker, the City of Weslaco Secretary, testified that some commissioners sometimes opposed the water treatment contracts, but Tafolla and John Cuellar—the commissioners who accepted bribes from Defendants—took official actions in favor of the contracts. ROA.23-40068.425-55. Although Defendants bribed different city commissioners who voted for the contracts, they did so for the benefit of the overall scheme to obtain city contracts for CDM and Briones, and their individual activities were advantageous, if not essential, to the success of the overall venture. *See Shah*, 84 F.4th at 223-24; *Shows Urquidi*, 71 F.4th at 381-82.

Third, regarding overlapping participants, "[t]here is no requirement that every member must participate in every transaction to find a single conspiracy." *United States v. Richerson*, 833 F.2d 1147, 1154 (5th Cir. 1987). "Parties who knowingly participate with core

conspirators to achieve a common goal may be members of an overall conspiracy." *Id.* "A single conspiracy exists where a 'key man' is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal." *Id.* As set forth in detail in the Statement of the Case, the companies paid Lopez, the "key man" who paid Quintanilla to bribe Tafolla and who paid Arturo Cuellar to bribe John Cuellar. Moreover, Tafolla testified that Quintanilla and Arturo Cuellar attended the meeting with Tafolla and Lopez at Cimarron Country Club when they discussed the votes for the contracts to CDM and Briones. ROA.23-40068.1552-57, 1915-16. There was adequate overlapping of participants. *See Shows Urquidi*, 71 F.4th at 382.

The district court instructed the jury that "one may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators." ROA.23-40068.4251. The court further instructed: "If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though the defendant had not participated before

and even though the defendant played only a minor part." ROA.23-40068.4251. The jury found Defendants guilty of conspiracy. No constructive amendment occurred. Given the strength of the evidence, Defendants cannot show an adverse effect on their substantial rights. In short, there is no error, let alone reversible plain error.

E.    Defendants waived their challenge to the changes to the superseding indictment because they agreed to those changes.

By the time of trial, three and one-half years after the superseding indictment, a coconspirator and cooperator had died (Lopez), one codefendant had been dismissed from the case (Garcia), and another codefendant had pleaded guilty and was testifying at trial (John Cuellar). The Government therefore narrowed the indictment to remove surplusage and shorten time periods. ROA.23-40068.4234-35. Not only were the changes absent objection, but they were with Defendants' agreement. ROA.23-40068.245-46. Now, for the first time on appeal, they attempt to challenge those agreed changes. *See* Br. 11-14.

"A party generally may not invite error and then complain thereof." *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 606 (5th Cir. 1991) (Baytank waived a challenge to the court's charge because the language had been requested by Baytank). Any error here was invited

and thus waived on appeal. *See id.* This case is more than a failure to object. Defendants agreed to the changes to the superseding indictment, and thus abandoned the challenges to those changes that they now attempt to raise. *See Olano*, 507 U.S. at 733 ("waiver is the 'intentional relinquishment or abandonment of a known right.'") (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A waived issue presents no error and no issue for this Court's review. *Id.*

Moreover, the superseding indictment here was narrowed, not broadened, thus no constructive amendment occurred. *See Griffin*, 800 F.3d at 203. In contrast to *Stirone*, Defendants were tried on a superseding indictment "that clearly set out the offense[s] for which [they] were] ultimately convicted." *Id.* at 140. Their "complaint is not that the [superseding] indictment failed to charge the offenses for which [they were] convicted, but that the [superseding] indictment charged more than was necessary." *Id.* To the extent they contend the changed dates resulted in a constructive amendment, the allegation of the offense date is not an essential element of the offense. *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011) (discrepancy between the date alleged in the

indictment and the proof at trial did not result in a constructive amendment of the indictment).

F.  John Cuellar and Tafolla, elected public officials, owed a duty of honest services, not Arturo Cuellar.

Arturo Cuellar asserts a constructive amendment because he was not a Weslaco public official liable for honest-services wire fraud. Br. 8-9. But he admits that the superseding indictment did not allege that he was a Weslaco public official. *See* Br. 9. Rather the superseding indictment alleged, and the evidence showed, that John Cuellar and Tafolla were the Weslaco public officials who were bribed in furtherance of the charged conspiracy and honest-services fraud scheme, not Arturo Cuellar. Accordingly, there was no constructive amendment.

To the extent that Arturo Cuellar contends he had to be a Weslaco public official to be guilty of honest-services wire fraud, his reliance on *Percoco v. United States*, 598 U.S. 319 (2023) is misplaced. In *Percoco*, the longtime political associate of a governor was convicted of honest-services wire fraud based on conduct that occurred during the defendant's break in public service. 598 U.S. at 322-23. Under those circumstances, the private citizen could not be guilty of honest-services wire fraud based on a theory the private citizen owed a duty of honest services to the public.

39

*Id.* at 330-31. Here, the honest-services wire fraud was based on the theory John Cuellar and Tafolla, the two elected city commissioners who were bribed in furtherance of the charged scheme, owed the public a duty of honest services. *See* ROA.23-40068.4251-52 (jury instructions).

Lastly, all the constructive amendment arguments are improper backdoor challenges to the sufficiency of the evidence. As explained in the Preface, Defendants have waived any sufficiency challenge by not formally raising it on appeal. Consequently, their attempts to argue the insufficiency of the evidence disguised as alleged constructive amendments to the superseding indictment fail.

## II. The district court acted within its discretion in denying Arturo Cuellar's recusal motion. His recusal arguments raised for the first time on appeal fail under plain-error review.

### A.  Standard of Review

This Court reviews the denial of a recusal motion for an abuse of discretion. *United States v. Merkt*, 794 F.2d 950, 960 (5th Cir. 1986). But recusal arguments raised for the first time on appeal are subject to the plain-error standard of review. *United States v. Allen*, 587 F.3d 246, 251 (5th Cir. 2009); *see also* Issue I (standard of review).

B.    <u>Relevant Facts</u>

Arturo Cuellar sought recusal based on a January 2015 automobile accident between the district judge, in her personal capacity, and a truck driver for J-III Trucking, a corporation owned by Arturo Cuellar. ROA.23-40068.3915. The judge sued the corporation and served its registered agent, Arturo Cuellar, with the lawsuit. ROA.23-40068.3915. Her lawyer sent a settlement demand to the corporation's insurance company for the corporation's total policy limits or $500,000, whichever was greater. ROA.23-40068.3915, 3941-44. After her deposition and a mediation, the case settled for $60,000 in March 2016. ROA.23-40068.3915, 3952-55. The court properly denied the recusal motion in a detailed nine-page order. ROA.23-40068.3982-90.

C.    <u>General Principles</u>

A judge shall disqualify herself in any proceeding in which her impartiality might reasonably be questioned. 28 U.S.C. § 455(a). The recusal standard is objective; the relevant inquiry is whether a reasonable person, with knowledge of all the circumstances, would harbor doubts about the judge's impartiality. *Johnson v. Lumpkin*, 74 F.4th 334, 341 (5th Cir. 2023). The "reasonable person standard in the

recusal context contemplates a 'well-informed, thoughtful, and objective observer, rather than the hypersensitive, cynical, and suspicious person.'" *Trevino v. Johnson*, 168 F.3d 173, 179 (5th Cir. 1999) (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)).

A judge is not required to recuse herself from a case, civil or criminal, simply because she was involved in litigation with a party. *In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005); *see also United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977) ("A judge is not disqualified merely because a litigant sues or threatens to sue him."). "[E]ach § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *Jordan*, 49 F.3d at 157.

D.    The judge properly denied the recusal motion.

The court properly denied the recusal motion in a detailed, nine-page order. ROA.23-40068.3982-90. The motion was based on an unremarkable automobile accident and a routine civil settlement years before this case, neither of which personally involved Arturo Cuellar. The case settled out of court without incident and Arturo Cuellar never identified any instances of animosity or bias by Judge Alvarez and did

not allege any contact between them either during or after the state litigation. ROA.23-40068.3965.

The court found that Arturo Cuellar had not offered facts supporting partiality and instead "improperly relies on unsubstantiated and baseless speculations and opinions." ROA.23-40068.3989-90. As the court found, Arturo Cuellar "grossly mischaracterizes the facts of the prior state civil lawsuit." ROA.23-40068.3987. Contrary to Arturo Cuellar's claims, the lawsuit was not against him, but J-III, which was insured by the insurance carrier, and Arturo Cuellar was served with process as J-III's registered agent. ROA.23-40068.3987. The resolution of a state civil lawsuit over three years before this unrelated federal criminal case, and indeed six years before trial, presented no conflict, personal bias, or antagonism in the federal case. ROA.23-40068.3989.

Arturo Cuellar incorrectly suggests recusal was required based on Judge Alvarez's transfer to Judge Crane of a 2015 federal civil case where he was sued in his capacity as a county commissioner (*see* Br. 18-19). As Judge Alvarez noted, she did not recuse herself in the 2015 case and Arturo Cuellar did not ask her to do so, even though it was closer in time to the auto accident than this case. ROA.23-40068.3988. Rather, the 2015

case was transferred for the sake of judicial economy to Judge Crane, who had another pending case involving the same issues and same defendants. ROA.23-40068.3988-89.

Arturo Cuellar states that the district court's comments at sentencing in response to his attempt at an offer of proof show that the judge "took personal offense to the outcome of the lawsuit." Br. 18. Arturo Cuellar mischaracterizes the record.

At sentencing, more than three and one-half years after the denial of the recusal motion, Arturo Cuellar filed a written "notice of offer of proof" to make the pleadings in the state civil lawsuit a part of this record "[f]or Appellate purposes." ROA.23-40068.4433. The court struck the documents because the documents had never been offered to the court and were unnecessary because the court had not disputed the factual basis in the recusal motion. ROA.23-40068.4442-43. The court concluded that, given the heavy media attention and public scrutiny of this case, the public filing of the documents "appears to simply be an attempt to embarrass the judge." ROA.23-40068.4442-43. The court allowed counsel to file the documents as a *sealed* offer of proof. ROA.23-40068.10687-88, 10693-10881.

In short, as the district court found, Arturo Cuellar failed to show that a reasonable person who knew all the circumstances would harbor doubts about the judge's impartiality, and he failed to show the judge held a deep-seated antagonism against him. ROA.23-40068.3990.

E.   Arturo Cuellar's additional arguments fail under plain-error review.

For the first time on appeal, Arturo Cuellar contends the judge's comments and actions during his trial and sentencing showed her partiality. *See* Br. 19-21. But "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). He has not shown that the judge had a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. Indeed, the record does not show any animus toward Arturo Cuellar or his counsel.

Arturo Cuellar claims the judge "Mirandized" a defense witness and threatened to have Arturo Cuellar's counsel arrested. Br. 19-20. These are gross mischaracterizations of the record; she did not threaten to have counsel arrested and she did not Mirandize a defense witness in

this trial. *See infra* Issue IV. Arturo Cuellar's recusal arguments lack

merit.

### III. The challenges to the sufficiency of the superseding indictment on the honest-services wire fraud (Counts 1, 2, 5-7) fail under plain-error review.

A.    <u>Standard of Review</u>

For the first time on appeal, Defendants contend the superseding

indictment failed to properly charge honest-services wire fraud offenses

because it did not charge that a "bribe was paid for tangible property."

They state that honest-services wire fraud "requires bribery appurtenant

to a property interest" and an "intangible interest, standing alone, does

not fall under these fraud statutes." Br. 23-24 (relying on *McNally v.*

*United States*, 483 U.S. 350 (1987) and *Cleveland v. United States*, 531

U.S. 24 (2000)).

The plain-error standard of review applies to the issue. *See, e.g.,*

*United States v. Stanford*, 805 F.3d 557, 565 (5th Cir. 2015) (reviewing

challenges to the sufficiency of the indictment under plain-error review);

*see also* Issue I (standard of review).

B.    General Principles

An indictment is sufficient if it contains the elements of the charged offense and fairly informs the defendant of the charge so that he can prepare a defense and invoke the Double Jeopardy Clause if a separate prosecution is brought on the same conduct. *See Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also* Fed. R. Crim. P. 7(c)(1) (an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged.").

C.    A Brief Background on Honest-Services Fraud, now Codified in 18 U.S.C. § 1346.

The mail and wire fraud statutes prohibit the use of certain instrumentalities to advance "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud). "Emphasizing Congress' disjunctive phrasing, the Courts of Appeals, one after the other, interpreted the term 'scheme or artifice to defraud' to include deprivations not only of money or property, but also of intangible rights." *Skilling v. United States*, 561 U.S. 358, 400 (2010). "[B]y 1982, all Courts of Appeals had embraced the honest-services theory of fraud." *Id.* at 401. "In most of these cases, public employees had

47

accepted a bribe or kickback in exchange for dishonest conduct that did not necessarily cause their employers to suffer a financial loss, but this conduct was found to constitute mail or wire fraud because it deprived the relevant government unit (and thus, by extension, the public) of the right to receive honest services." *Percoco v. United States*, 598 U.S. 319, 326 (2023) (citing *Skilling*, 561 U.S. at 400-01).

In 1987, the Court rejected the entire concept of honest-services fraud and held the mail fraud statute was "limited in scope to the protection of property rights." *McNally*, 483 U.S. at 360. "If Congress desires to go further, it must speak more clearly than it has." *Id.*

"Congress responded swiftly." *Skilling*, 561 U.S. at 402. In 1988, Congress enacted 18 U.S.C. § 1346, which expressly provides the term "scheme or artifice to defraud," as used in the mail and wire fraud statutes, "includes a scheme or artifice to deprive another of the intangible right of honest services." *Id.* (quoting § 1346).

In *Skilling*, the Court rejected a vagueness challenge to § 1346 by looking to the honest-services doctrine as it developed before *McNally*. 561 U.S. at 404. "In the main, the pre-*McNally* cases involved fraudulent schemes to deprive another of honest services through bribes or

48

kickbacks supplied by a third party who had not been deceived." *Id.* "Confined to these paramount applications, § 1346 presents no vagueness problem." *Id.*

D.    <u>Discussion</u>

The superseding indictment alleged Quintanilla, John Cuellar, Arturo Cuellar, Lopez, and Tafolla, and others "devised and intended to devise a scheme and artifice to defraud and to deprive the City of Weslaco, the Weslaco City Commission, and the citizens of Weslaco of their intangible right to the honest services of John F. Cuellar and Tafolla, both elected officials, through bribery." ROA.23-40068.4204 (count 1); *see also* ROA.23-40068.4218 (counts 2, 5-7). The superseding indictment is sufficient under Rule 7(c)(1).

Defendants nevertheless argue that "*McNally* clearly decided that the federal fraud statutes only bar schemes for obtaining property." Br. 24. But *McNally* was decided before § 1346's enactment, which indeed was enacted in response to *McNally* to expressly provide for the fraud statutes to include the pre-*McNally* honest-services fraud theory. *Skilling*, 561 U.S. at 404.

Relying on *Kelly v. United States*, 140 S. Ct. 1565 (2020), Defendants argue "bribes were exchanged for votes, an intangible," and "bribes were not made to obtain money or property." Br. 25-26. *Kelly* is not helpful to them, however, because *Kelly* did not involve a challenge to the sufficiency of the indictment, honest-services wire fraud under § 1346 or bribery under § 666(a)(2), as in this case.

In *Kelly*, state public officials in New Jersey realigned toll lanes leading to the George Washington Bridge causing gridlock during rush hour in Fort Lee to punish the mayor for not supporting the governor's reelection bid. 140 S. Ct. at 1568. The responsible officials were charged with wire fraud under the portion of § 1343 that prohibits a scheme to obtain money or property by fraud and with fraud on a federally funded program or entity under § 666(a)(1), which prohibits a state or local agent from obtaining property by fraud. *Id.* Both statutes prohibited fraudulent schemes for obtaining property. *Id.* The Court noted: "Save for bribes or kickbacks (not at issue here)," a state or local official's fraudulent scheme violates § 1343 and § 666(a)(1)(A) only when they are for obtaining money or property. *Id.* at 1572. Honest-services wire fraud under § 1346 was not at issue in *Kelly*.

Defendants also rely on *Cleveland v. United States*, 531 U.S. 12 (2000) and *Ciminelli v. United States*, 598 U.S. 306 (2023). Br. 24, 26. In *Cleveland*, the Court held "§ 1341 requires the object of the fraud to be 'property' in the victim's hands and that a Louisiana video poker license in the State's hands is not 'property' under § 1341. 531 U.S. at 26-27. In *Ciminelli*, the Court rejected the Second Circuit's "right to control" theory under which the Government could establish wire fraud by showing the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions. 598 U.S. at 310-12. "The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest." *Id.* at 316.

Neither case involved honest-services fraud. *Cleveland*, 531 U.S. at 20 ("there is no assertion that Louisiana's video poker licensing scheme implicates the intangible right of honest services."); *Ciminelli*, 598 U.S. at 315 (noting Congress' enactment of § 1346 revived the pre-*McNally* intangible right to honest services, but not other intangible rights such as the intangible right to control). Nor did they address the sufficiency of

the indictment, as raised here. *See, e.g., Ciminelli*, 598 U.S. at 317 (Alito, J., concurring).

Although Defendants purportedly challenge the adequacy of the superseding indictment, they complain the jury instructions require reversal of the honest-services fraud convictions under *Percoco*. Br. 27-28. As explained in Issue I, the honest-services wire fraud was properly based on the theory John Cuellar and Tafolla, two elected city commissioners, owed the public a duty of honest services. *See* ROA.23-40068.4251-52 (jury instructions). Unlike *Percoco*, there is no issue here regarding the scope of a private citizen's duty, if any.

Defendants assert "the Government provided no evidence of anything more than 'mere consent' to provide money in the case of Quintanilla's payments to Tafolla; and absolutely zero evidence of any consent by [Arturo Cuellar] to provide money to [John] Cuellar." Br. 28-29. To the extent they attempt to raise a sufficiency-of-the-evidence challenge, it fails for inadequate briefing. *See infra* Preface and Issue I. Moreover, the superseding indictment here alleged, and the evidence likewise showed, Defendants' active agreement and participation in the

honest-services wire fraud conspiracy. This case is not one of acquiescence or mere consent.

In short, this case is like the "vast majority" of pre-*McNally* honest-services cases, which "involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Skilling*, 561 U.S. at 407. Indeed, the "honest-services doctrine had its genesis in prosecutions involving bribery allegations." *Id.* at 408. There is no error, let alone reversible plain error, in the sufficiency of the superseding indictment regarding honest-services wire fraud. Indeed, Defendants concede they had notice of the charged crimes. Br. 23.

## IV.   Arturo Cuellar has failed to show that the district court improperly chilled a defense witness's testimony.

### A.   Standard of Review

The court is afforded wide latitude in its control over the mode and scope of witness examination, and this Court's review of the court's exercise of that control is for an abuse of discretion. *See* Fed. R. Evid. 611(a); *Geders v. United States*, 425 U.S. 80, 86-87 (1976).

Arturo Cuellar contends the court "chilled" a defense witness's testimony by giving the witness *Miranda* warnings. Br. 31-32. As shown below, Arturo Cuellar grossly mischaracterizes the record.

B.    <u>Relevant Facts</u>

The challenged admonition was to Arturo Cuellar' son, Arturo Cuellar III (AC III), who testified in defense of his father. At the time of trial, AC III was the owner of QRM. ROA.23-40068.2959. The prosecutor cross-examined AC III on QRM's tax records. ROA.23-40068.2958-59. AC III knew QRM claimed as tax deductions John Cuellar's purported legal work. ROA.23-40068.2959-60. Some deductions were for work well before the tax years and for work unrelated to QRM, including advice to AC III. ROA.23-40068.2960.

During a sidebar at the bench, the prosecutor expressed concern that AC III's testimony exposed him to criminal liability. ROA.23-40068.2962-63.[6] The judge noted the question was whether she "need[s] to admonish this witness and whether he needs to have counsel." ROA.23-40068.2964. Arturo Cuellar seemingly agreed, responding: "We

---

[6] The testimony from John Cuellar and Lucia Lozano, QRM's co-owner before AC III, was that John Cuellar did not perform any legal work for QRM. ROA.23-40068.871, 940, 955, 958, 963-64.

can do that outside the presence of the jury." ROA.23-40068.2964. At the end of the bench sidebar, the court had the jury exit the courtroom. ROA.23-40068.2966.

The court asked AC III when he became an owner of QRM, he responded in 2021. ROA.23-40068.2967. AC III was QRM's half owner and his father owned the other half, but AC III ran the daily operations. ROA.23-40068.3023. Arturo Cuellar asked to object at the bench. ROA.23-40068.2967.

At the bench, Arturo Cuellar stated: "There is a Sixth Amendment right and a Fifth Amendment right that my client has to due process to a fair trial, and the Court is creating a problem by admonishing this witness [AC III]." ROA.23-40068.2970. Arturo Cuellar noted the limitations period for the taxes was unknown. ROA.23-40068.2968-70. The judge stated, "I'd rather err on the side of caution." ROA.23-40068.2968.

The judge said she would admonish AC III that she did not know whether there was a legal issue, but she would allow him to consult an attorney if he wanted, and they would resume the next day. ROA.23-40068.2971.

Arturo Cuellar was concerned the admonition would be in the media's presence and noted that during other unspecified times when the jury was not present, they still approached the bench when there were issues. ROA.23-40068.2969, 2972. The prosecutor stated he had no problem with the admonition occurring at the bench, and Arturo Cuellar agreed. ROA.23-40068.2973.

While the jury was still outside the courtroom, the court had AC III step forward to the bench. ROA.23-40068.2974. The following exchange occurred between the court and AC III at the bench:

> THE COURT: Protocol. I started to tell you that I am not in touch in the field with the IRS issues on a regular basis. I do not know how -- the IRS statute of limitations. I do not know the liability of a new owner for tax issues related to a company that you acquire.
>
> There's been some issues about these payments to Mr. [John] Cuellar and whether they were payments that could be deducted (indiscernible) Quality Ready Mix. You're here testifying as to those.
>
> You have a -- if you want to consult with attorney -- with an attorney, I will stop this trial for the rest of the day. You can consult with an attorney about those issues. You know, counsel -- some counsel believe there's no issues. Some counsel believe there may be an issue. And I can't make the decision in five minutes.
>
> THE WITNESS: Yeah.
>
> THE COURT: So, if you wanted – we're close to the end of the day. If you want to consult with an attorney and -- in that regard, I would

allow you to recap with the attorney the testimony that you've given. Normally, if you're still testifying, you can't go off and discuss it with anybody else.

THE WITNESS: Correct.

THE COURT: But, for purposes of consulting with another attorney, you know, you have full right to do that, to relate to him, you know, what the testimony has been and what the questions are asked. What, you know –

THE WITNESS: Yes, Your Honor.

THE COURT: -- you understood. If you want to do that, and then we can see where we are tomorrow morning – if you want to do that.

THE WITNESS: I would like to –

THE COURT: Okay.

THE WITNESS: -- speak to my attorneys.

THE COURT: Okay. Then we will recess for the day.

ROA.23-40068.2975-76.

The jury returned to the courtroom, and the court said, "sometimes we have issues that pop up that we have to discuss a little bit further," and "since it is already 4:30, … I'm going to recess for the day." ROA.23-40068.2977. AC III testified the next day. ROA.23-40068.3000-74.

C.   Discussion

Arturo Cuellar contends the court "chilled" AC III's testimony by giving him *Miranda* warnings "in the presence of the jury and created a scene that led the observers in the courtroom to understand the witness may be testifying to criminal conduct." Br. 31-32. Arturo Cuellar grossly mischaracterizes the record.

As set forth in detail above, the court admonished AC III regarding possible IRS tax liability, not necessarily criminal liability. The admonition did not occur in open court, but at the bench, and while the jury was outside the courtroom. The court did not read AC III his rights under *Miranda v. Arizona*, 384 U.S. 436, 468-79 (1966). The court did not threaten AC III or otherwise actively discourage him from testifying. In fact, AC III continued to testify the next day after the admonition. AC III's testimony consists of 193 pages of transcript, of which 74 pages occurred after the admonition.

The admonition here is far from the situation in *Webb v. Texas*, 409 U.S. 95, 96, 98 (1972), where "the judge's threatening remarks" about a perjury prosecution "directed only at the single witness for the defense, effectively drove that witness off the stand." There is no error.

**V.    Quintanilla's Confrontation Clause challenges to coconspirator statements fail because the statements were nontestimonial. The district court acted within its discretion in admitting the coconspirator recordings under the coconspirator rule, Fed. R. Evid. 801(d)(2)(E).**

A.    Standard of Review

This Court reviews de novo alleged violations of the Confrontation Clause. *United States v. Olguin*, 643 F.3d 384, 391 (5th Cir. 2011). In the absence of a Sixth Amendment violation, this Court's review is for an abuse of discretion. *Id.* This Court reviews admission of coconspirator statements under Rule 801(d)(2)(E) for an abuse of discretion. *United States v. Fairley*, 880 F.3d 198, 213-14 (5th Cir. 2018).

Quintanilla asserts the admission of LeFevre's comment that the water treatment projects were a "beached whale" violated the Confrontation Clause. Quintanilla challenges the admission of Lopez's statements on recordings under both the Confrontation Clause and the hearsay rules. Quintanilla does not identify Lopez's specific statements that were admitted in error. "A defendant who challenges the improper admission of testimony that potentially includes hearsay 'must specifically identify the particular statement[s] he is challenging.'" *United States v. Trevino-Chavez*, 830 F. App'x 425, 428 (5th Cir. 2020)

(quoting *United States v. Martinez-Perez*, 941 F.2d 295, 300 (5th Cir. 1991)). The Confrontation Clause and hearsay analyses turn on details about the challenged statements, the circumstances under which they were made, and the purposes for which they were offered. Because Quintanilla does not assert his challenges to Lopez's statements with the requisite specificity, he has waived those claims. *See* Preface; *Trevino-Chavez*, 830 F. App'x at 428.

B.   Relevant Facts

*Quintanilla's Motion in Limine*

On June 21, 2021, Quintanilla filed a motion in limine seeking to exclude evidence, including recordings, of Lopez's motive, knowledge, intent, or state of mind because such evidence would violate Quintanilla's Sixth Amendment confrontation right and Fed. R. Evid. 403, 602. ROA.23-40033.7489-90. He also sought to exclude out-of-court statements by non-testifying people, claiming such statements would violate his Sixth Amendment confrontation right and Fed. R. Evid. 401, 403, and 802. ROA.23-40033.7492.

At a status conference on July 9, 2021, the court stated the motion regarding Lopez was too broad. ROA.23-40033.151-53. The court granted

the motion to the extent it sought to prevent a witness from testifying Lopez knew X or intended Y or had the requisite state of mind. ROA.23-40033.153-54. The court otherwise denied the motion because the Government was permitted to present evidence showing Lopez's state of mind for the jury to decide. ROA.23-40033.154. Quintanilla responded, "That's fair, Your Honor." ROA.23-40033.154.

Regarding out-of-court statements, the court characterized the motion as simply asking the court to "make the other side comply with the rules." ROA.23-40033.161. The court denied the motion as "rather broad" and noted either side can object at trial if there is an improper out-of-court statement. ROA.23-40033.161-62.

### LeFevre's "Beached Whale" Comment

During Elizabeth Walker's direct examination, the Government sought to elicit testimony that LeFevre said the WTP was a "beached whale." ROA.23-40033.482. Quintanilla objected the statement was hearsay and violated the Sixth Amendment. ROA.23-40033.481, 484.

The prosecutor responded the statement was the subject of the motion in limine, which had been overruled; LeFevre was a coconspirator; his statement demonstrated his connection to the scheme;

and the statement was not offered for the truth of the matter asserted. ROA.23-40033.482.

The court overruled the objection. ROA.23-40033.485. The court found the statement relevant and not hearsay because it was not offered for the truth of the matter asserted. ROA.23-40033.485. The court also found the statement did not violate the Sixth Amendment confrontation right. ROA.23-40033.485.

At trial, Walker testified that in December 2014, when she was serving as interim City Manager, LeFevre called her to assist in payment for his services. ROA.23-40033.481, 486. During the conversation, LeFevre said, "you have to know this water treatment plant is a beached whale and everyone's feeding off the carcass." ROA.23-40033.487.

### Lopez's Recordings

The Government sought to introduce two recordings and the English translation transcripts of Lopez's lunch meetings with Tafolla and Quintanilla. ROA.23-40033.1502, 1506. One conversation occurred in December 2017 and the other in March 2018. ROA.23-40033.1515.

Quintanilla asked to approach the bench about his motion in limine. ROA.23-40033.1505. Arturo Cuellar requested to "step away"

because "I don't have an issue with this." ROA.23-40033.1505-06. The court responded, as "long as you have no objection to whatever the Court rules on," and he agreed. ROA.23-40033.1506.[7]

The prosecutor noted the recordings, which contained conversations about the scheme, were coconspirator statements in furtherance of the conspiracy. ROA.23-40033.1506-07. The statements by other individuals were not offered for the truth of the matter asserted, but to show how Quintanilla responded. ROA.23-40033.1507, 1511.

Quintanilla stated the court had excluded all statements from Lopez when it decided the motion in limine. ROA.23-40033.1513. The court disagreed. ROA.23-40033.1513. Quintanilla objected the recordings were "hearsay within hearsay" and a "bolstering hearsay statement" as to Tafolla, who was a testifying witness. ROA.23-40033.1512, 1516-17.

The court overruled the objection and admitted the recordings. ROA.23-40033.1515. Quintanilla also objected because he was "being denied the Sixth Amendment right to cross-examine prior witnesses based on the statements, exculpatory statements, by Leo Lopez from

---

[7] Issue V thus does not apply to Arturo Cuellar.

recorded transcripts produced in discovery." ROA.23-40033.1516. The court overruled the objection. ROA.23-40033.1516-17.

Quintanilla stated once Lopez became an informant, he no longer was a coconspirator, but the court noted the conversations included two other coconspirators, Quintanilla and Tafolla. ROA.23-40033.1520-21.

During Tafolla's testimony, the court admitted the recordings and English translation transcripts: Government Exhibits 220, 221, 222, and 223. ROA.23-40033.1510, 1597, 1601, 1607, 5836-5891 (Gov. Ex. 221 transcript), 5892-5974 (Gov. Ex. 223 transcript).

The recordings were played for the jury and Tafolla explained the discussions. ROA.23-40033.1603-14. During the meetings, there were discussions that Mayor David Suarez was asking about Briones's subs or consultants, and Lopez asked if they had mentioned Quintanilla as a consultant. ROA.23-40033.1610-11, 5926. Tafolla responded they had only mentioned Lopez. ROA.23-40033.1611-12, 5926-27. Lopez asked what they knew about Quintanilla, and Tafolla said nothing. ROA.23-40033.1612-13, 5927-28. Lopez said he wanted to be "on the same page" regarding a cover story for Lopez's checks to Quintanilla and asked Quintanilla what Lopez should say if "the Feds" asked about the checks.

ROA.23-40033.1613-14, 5930, 5932. Quintanilla responded that they did a "maquila"[8] business elsewhere, telecommunication services. ROA.23-40033.1613-14, 5933. That was untrue. ROA.23-40033.1613-14.

C.   Confrontation Clause

Quintanilla contends his Sixth Amendment confrontation right was violated by the admission of Lopez's statements on the recordings and Walker's testimony about LeFevre's "beached whale" comment.

As a threshold matter, an out-of-court statement is not subject to the Confrontation Clause if it is not hearsay, that is, if it is not offered to prove the truth of the matter asserted in the statement. *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *see* Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement "a party offers in evidence to prove the truth of the matter asserted in the statement."). Coconspirator LeFevre's "beached whale" comment was not offered for the truth of the matter asserted and thus did not violate the Confrontation Clause.

---

[8] A maquila is a business that fixes phones or sells components for phones. ROA.23-40033.1585.

In addition, the Confrontation Clause applies only to testimonial hearsay. *See Crawford*, 541 U.S. at 68. Coconspirator statements made in furtherance of a conspiracy are not testimonial. *Id.* at 56; *United States v. King*, 541 F.3d 1143, 1145-46 (5th Cir. 2008); *see Giles v. California*, 554 U.S. 353, 374 n.6 (2008) (coconspirator hearsay does not violate Confrontation Clause because "it [is] not (as an incriminating statement in furtherance of the conspiracy would probably never be) testimonial").

The recordings involving Lopez, Tafolla, and Quintanilla contained statements from coconspirators made in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E) (defining coconspirator statements as not hearsay). It is unclear, but it seems Quintanilla challenges only Lopez's statements on the recordings. Indeed, there is no Confrontation Clause issue regarding Quintanilla's own statements on the recordings because an opposing party's statements are not hearsay. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Flores*, 63 F.3d 1342, 1358 (5th Cir. 1995) (defendant's own statements on recordings were admitted as party admissions under Rule 801(d)(2)(A)). There is no Confrontation Clause issue regarding Tafolla's statements because he testified at trial and was subjected to cross-examination. *See Crawford*, 541 U.S. at 59 n.9 ("we

reiterated that when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

Lopez's statements on the recordings were not offered for the truth of the matters asserted but to show Quintanilla's reactions. *See United States v. Gutierrez-Chavez*, 842 F.2d 77, 81 (5th Cir. 1988) (cooperating conspirator's statements on recordings were not offered for the truth of the matters asserted but to put the defendant's responses in context); *see also United States v. Jordan*, 952 F.3d 160, 168 (4th Cir. 2020) ("recorded statements of non-testifying informants like Grant may be used at trial consistent with the Confrontation Clause so long as they are offered only to provide context for the defendant's own statements, and not for the truth of the matter asserted"), *cert. denied*, 141 S. Ct. 1051 (2021). The admission of the recordings did not violate the Confrontation Clause. *See United States v. Alaniz*, 726 F.3d 586, 607-08 (5th Cir. 2013) (recorded conversations between codefendant and informant who criminally implicated defendant were nontestimonial).

D.    Rule 801(d)(2)(E)

A statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). Quintanilla contends Lopez's statements on the recordings were not admissible as coconspirator statements for three reasons. *See* Br. 36. First, he asserts the central aim of the conspiracy had ended when the statements were made, relying on *Krulewitch v. United States*, 336 U.S. 440, 442 (1949) (coconspirators' statements about not talking and taking the blame for another were made after their arrest and were not in furtherance of the conspiracy). *Krulewitch* does not stand for a broad proposition that statements to avoid detection can never be in furtherance of a conspiracy. "Given that concealment is often a necessary part of a conspiracy, statements made to aid the concealment are made in furtherance of the conspiracy." *United States v. Broussard*, 80 F.3d 1025, 1039 (5th Cir. 1996). Statements made to "encourage loyalty and obedience among conspirators" or "to enforce [a coconspirator's] understanding of his bargain" also are in furtherance of the conspiracy. *Fairley*, 880 F.3d at 214. Like the statements in *Fairley*, the statements here were to confirm understanding of the agreement and

68

ensure everyone was "on the same page." ROA.23-40033.1613, 5930. Also, unlike *Krulewitch*, where the conspirators had been arrested and thus the criminal process was underway, the recordings here were made before indictment. ROA.23-40033.1515.

Second, Quintanilla contends the statements were made after the conspiracy had ended based on the dates alleged in the superseding indictment. Br. 36. But the "in furtherance" requirement of the coconspirator rule "is not to be construed too strictly lest the purpose of the exception be defeated." *Fairley*, 880 F.3d at 214 (quoting *United States v. Cornett*, 195 F.3d 776, 782 (5th Cir. 1999)). The dates alleged in the indictment are not necessarily the limit for purposes of the evidentiary coconspirator rule. *See id.* at 213. The coconspirator rule is "founded on concepts of agency law" and therefore "differs from conspiracy as a crime." *Id.* (quoting *United States v. El-Mezain*, 664 F.3d 467, 503 (5th Cir. 2011)). A conspiracy for purposes of the hearsay exclusion may be shown merely by engagement in a joint plan that was non-criminal in nature. *Id.*

Here, as in *Fairley*, the recorded conversations confirm the continuing nature of the venture. *Id.* at 214. In *Fairley*, this Court held

that recorded statements made in December 2012 were in furtherance of the conspiracy, even though the indictment alleged the conspiracy ended in August 2011. *Id.* at 213-14. Likewise, the recorded statements here made in December 2017 and March 2018 were in furtherance of the conspiracy, even though the superseding indictment alleged an end date of December 2016.

Lastly, Quintanilla contends Lopez was an informant and the recordings were inadmissible because there can be no conspiracy between an informant and a defendant. But, as the court noted, Tafolla and Quintanilla were two coconspirators involved in the recording. ROA.23-40033.1520-21.

In sum, Quintanilla's arguments fail. There is no Confrontation Clause violation regarding LeFevre's "beached whale" comment or Lopez's statements on the recordings. The district court acted within its discretion in admitting the recordings under Rule 801(d)(2)(E).

**VI.A.    The district court acted within its discretion in excluding a defense expert's testimony regarding the propriety of the contracts because it was irrelevant.**

A.    Standard of Review

Defendants challenge the exclusion of John Shaw's purported expert testimony regarding the propriety of the WTP's contractual process. This Court reviews a district court's decision to exclude evidence for an abuse of discretion. *United States v. Shah*, 84 F.4th 190, 236 (5th Cir. 2023).

B.    The court properly excluded Shaw's testimony as irrelevant.

The district court properly excluded Shaw's testimony about the "reasonableness of the costs, methods, and materials for the water plant projects" as irrelevant because the substance of the WTP and the legitimacy or propriety of the contracts were not at issue. ROA.23-40068.239, 241-43, 4188, 4193-95. Indeed, the jury was instructed: "It is no legal defense that the official acts were good for the community or were acts that the public official would have or should have taken without the bribe." ROA.23-40068.4259. The jury also was instructed that it is not a defense to bribery that the official act sought to be influenced is "lawful, desirable, or even beneficial to the public" or that "the public official

71

would have or could have taken the same action without being paid." ROA.23-40068.4260.

Defendants contend Shaw's testimony was admissible to show the propriety of the no-bid contractual process. Br. 38-39. But their argument is contrary to the court's jury instructions. Moreover, as the Government noted, "[i]t is not a defense to bribery that, had there been no bribe, the official might have made the very recommendation the briber wanted him to make." ROA.23-40068.4194 (citing *United States v. Reeves*, 892 F.2d 1223, 1226 (5th Cir. 1990)); *see also City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid."); *United States v. McDonough*, 727 F.3d 143, 161 (1st Cir. 2013) ("The issue in this case is not whether the defendants truly thought the software was a benefit to the Commonwealth; instead it is whether they intended to exchange payments to [a politician] for assistance to [a contractor].").

Consequently, Shaw's testimony about the propriety of the contracts was irrelevant and thus inadmissible. Fed. R. Evid. 402; *see,*

*e.g., United States v. Loe*, 248 F.3d 449, 469 (5th Cir. 2001) (affirming exclusion of expert testimony that was irrelevant to the issues).

Defendants also complain that Shaw's declaration was excluded at sentencing. Br. 40. Arturo Cuellar attempted to present it during the sentencing court proceeding, rather than within the pre-sentencing deadlines set by the court. ROA.23-40068.3670. Defendants do not explain why the Declaration should have been admitted at sentencing. Br. 40. This portion of the issue is waived for inadequate briefing.[9] *See* Preface.

---

[9] Defendants assert the judge used her own life experience and news articles to determine that Defendants provided water at inflated prices and that Weslaco did not receive the benefit of the contract. Br. 40, 43. They mischaracterize the record. After noting a news article about water issues in a community outside Scottsdale, Arizona and her experience in Donna, Texas under a boil water notice, the judge concluded that a "boil water notice isn't quite as bad as having a whole wastewater treatment plant that needs replacing. So the City was in a situation where they did have to do something, they have to act." ROA.23-40068.3721-22. She did not make determinations about inflated pricing or the benefit of the contract.

**VI.B.    The district court acted within its discretion in excluding privileged emails withheld in violation of discovery rules.**

A.    Standard of Review

Arturo Cuellar challenges the exclusion of privileged emails between an attorney and J-III. The abuse-of-discretion standard applies. *United States v. Shah*, 84 F.4th 190, 236 (5th Cir. 2023).

B.    Relevant Facts

During AC III's direct examination, Arturo Cuellar attempted to introduce emails between an attorney and J-III. ROA.23-40068.3045-47. The court excluded the emails because they were privileged attorney-client emails as to J-III and because the documents were not produced (in a privilege log) in response to the Government's subpoena to J-III. ROA.23-40068.3047-55. The court found the documents were responsive to the subpoena and the Government relied on the lack of documents as part of its trial theory that John Cuellar performed no legal work for QRM. ROA.23-40068.3054-55. The court noted Arturo Cuellar could not withhold documents and then come to trial and use those documents to dispute the Government's theory. ROA.23-40068.3052.

When the documents were produced for the first time in the courtroom during the trial, the prosecutor noted that he did not review them because J-III had not waived its attorney-client privilege as to those emails. ROA.23-40068.3053-55. Arturo Cuellar offered no reason why he had not provided the documents to the Government as part of discovery. ROA.23-40068.3047-55; *see* Fed. R. Crim. P. 16(b)(1)(A). Arturo Cuellar argued, without specificity, that his discovery violation should be excused because "the Government produces the morning of a particular witness." ROA.23-40068.3054.

C.    The emails between J-III and its attorney were properly excluded.

The district court acted within its discretion in excluding the emails because Arturo Cuellar failed to produce them during discovery. *See* Fed. R. Crim. P. 16(d)(2)(C) (if a party fails to comply with discovery rules, the court may prohibit that party from introducing the undisclosed evidence); *United States v. Crook*, 479 F. App'x 568, 576 (5th Cir. 2012) (affirming exclusion of undisclosed defense witness due to prejudice to the Government). Indeed, the record suggests Arturo Cuellar's nondisclosure was "willful and motivated by a desire to obtain a tactical advantage."

*Taylor v. Illinois*, 484 U.S. 400, 415 (1988) (affirming exclusion of material defense witness as a sanction for discovery violation).

Moreover, the emails were privileged communications between J-III and its attorney, and Arturo Cuellar did "not have an unfettered right to offer testimony [or evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id.* at 410. As the prosecutor noted, there had not been a proper waiver of the privilege. ROA.23-40068.3054.

Arturo Cuellar asserts the emails are "exonerating" and show that John Cuellar legitimately worked as QRM's counsel. Br. 40-41. But Arturo Cuellar has not identified the J-III emails in the record, their content, or significance, or explained John Cuellar's connection to them, if any. Consequently, Arturo Cuellar has not shown how the J-III emails counter the testimony from John Cuellar and Lucia Lozano, QRM's previous co-owner, that John Cuellar performed no legal work for QRM. ROA.23-40068.871, 940, 955, 958, 963-64. Nor has Arturo Cuellar explained how the J-III emails counter John Cuellar's testimony and the documentary evidence, detailed in the Statement of the Case, that Arturo

Cuellar paid John Cuellar $405,000 in bribes, funneled through QRM. There is no error.

> **VII. and IX.** **The district court's sentencing findings regarding Arturo Cuellar's base offense level and value of payment and Quintanilla's obstruction of justice were not clearly erroneous.**

A.    <u>Standard of Review</u>

This Court reviews de novo the district court's legal interpretations of the Sentencing Guidelines but reviews its factual findings for clear error. *United States v. Roussel*, 705 F.3d 184, 195 (5th Cir. 2013). A factual finding is not clearly erroneous if it is plausible considering the whole record. *United States v. Mendoza-Gomez*, 69 F.4th 273, 280 (5th Cir. 2023), *cert. denied*, 2023 WL 6558685 (U.S. Oct. 10, 2023) (No. 23-5512). A finding is clearly erroneous only if this Court is left with the definite and firm conviction that a mistake occurred. *Id.* This Court may affirm guideline adjustments on any basis supported by the record. *Roussel*, 705 F.3d at 195.

B.    <u>Arturo Cuellar's base offense level was 14 because he was a</u>
<u>public official</u>.

The district court properly found Arturo Cuellar's base offense level to be 14, instead of 12, because he was a public official, a Hidalgo County

Commissioner, when the crimes occurred. ROA.23-40068.3695-98, 3779 (¶75). *See* USSG § 2C1.1(a)(1) (2021).

The commentary to § 2C1.1 provides that the term "public official" "shall be construed broadly" and includes five categories of definitions:

(A)    "Public official" as defined in 18 U.S.C. § 201(a)(1).

(B)    A member of a state or local legislature. "State" means a State of the United States, and any commonwealth, territory, or possession of the United States.

(C)    An officer or employee or person acting for or on behalf of a state or local government, or any department, agency, or branch of government thereof, in any official function, under or by authority of such department, agency, or branch of government, or a juror in a state or local trial.

(D)    Any person who has been selected to be a person described in subdivisions (A), (B), or (C), either before or after such person has qualified.

(E)    An individual who, although not otherwise covered by subdivisions (A) through (D): (i) is in a position of public trust with official responsibility for carrying out a government program or policy; (ii) acts under color of law or official right; or (iii) participates so substantially in government operations as to possess de facto authority to make governmental decisions (e.g., which may include a leader of a state or local political party who acts in the manner described in this subdivision).

USSG § 2C1.1, cmt. n.1.

Given Arturo Cuellar's status as an elected county commissioner, i.e., a member of the local legislature, he was a public official under subsection B. Alternatively, he was a public official under subsection E because he (i) held a position of public trust with official responsibility for carrying out government programs and policies or (ii) acted under color of law or official right.

Arturo Cuellar asserts he was not a public official because he was not a Weslaco public official or otherwise in a position of public trust regarding Weslaco functions and the offenses. Br. 43; *see* ROA.23-40068.3694, 3757-58, 10653-54 (objection on similar basis). But subsections B and E of the guideline definition of public official plainly do not require that the status as a public official have any nexus to the crime.

In *Roussel*, the defendant was a police department captain convicted of a scheme to defraud a utilities provider. 705 F.3d at 187. He argued he was not a public official under subsection C because he was not acting for, or on behalf of, his police department when he committed the crime. *Id.* at 196. This Court held that, irrespective of whether he was acting for the police department at the time of the criminal activity, he

was a public official under subsection E. *Id*. He was the commander of the police department's traffic division, responsible for coordinating hurricane evacuations, "clearly a position of public trust." *Id*.

In other words, because the defendant in *Roussel* was a public official under subsection E, which did not require a nexus to the crime, it was irrelevant whether his status had any connection to the crime. Similarly, because Arturo Cuellar is a public official under either subsection B or E—which he does not dispute—and neither subsection requires a nexus to the crime, it is irrelevant whether his status had any connection to his crimes.

Arturo Cuellar falls within the plain language of the guideline definition of "public official," which does not require that he have acted on behalf of Weslaco. He provides no authority to suggest the Guidelines mean something other than what they plainly say. There is no error.

C.    <u>Arturo Cuellar's Value of Payment was $4.1 million.</u>

The court properly found Arturo Cuellar's value of payment to be $4.1 million. ROA.23-40068.3678. The Sentencing Guidelines provided as follows:

> If the value of the payment, the benefit received or to be received in return for the payment, the value of anything

obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, *whichever is greatest*, exceeded $6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

USSG § 2C1.1(b)(2) (emphasis added).

The contracts obtained by CDM, Briones, and LeFevre were $38.5 million and $2,978,950, but the benefit received could not be determined. ROA.23-40068.3779 (¶77). Although the City of Weslaco estimated its loss at $10 million, it had not received a definitive analysis from its expert at the time of sentencing; the loss to the City, therefore, could not be determined. ROA.23-40068.3795, 10684-86.

The trial evidence showed that Briones and LeFevre paid Lopez a total of $4,117,364 in bribe payments to be distributed to Defendants and coconspirators. ROA.23-40068.2739-41, 2760-61, 2765. Arturo Cuellar was thus held accountable at sentencing for $4.1 million in bribe payments. ROA.23-40068.3779 (¶77), 3795-96; *see* USSG § 2B1.1(b)(1)(J) (18-level increase for more than $3.5 million to $9.5 million).

The $4.1 million value of payment was not clearly erroneous. Lopez received $4.1 million, from which he paid himself and other coconspirators, including Defendants, for bribes to the Commissioners.

As the Government noted at sentencing, "[i]t's reasonably foreseeable that the person at the beginning of the stream is going to receive a larger amount and break off pieces of those bribery proceeds and share them downstream." ROA.23-40068.3678.

Arturo Cuellar asserts the value of payment should be less than $500,000, the amount received by the commissioners. Br. 44.[10] But Arturo Cuellar was convicted of a conspiracy that included Lopez. The "offense" under § 2C1.1 includes the offense of conviction and all relevant conduct. *United States v. Richard*, 775 F.3d 287, 297 (5th Cir. 2014) (citing *Roussel*, 705 F.3d at 198). The court therefore properly included the amounts paid to Lopez in the determination of the value of payment. *See id*.

Arturo Cuellar also summarily challenges restitution and the fine, based only on the value of payment. Br. 44. Since the value of payment is correctly determined to be $4.1 million, his summary challenges to the restitution and fine necessarily fail.

---

[10] In the district court, Arturo Cuellar asserted the amount should be limited to what he received, which was less than $1.5 million. ROA.23-40068.3758; *see* USSG § 2B1.1(b)(1)(H) (14-level increase for more than $550,000 to $1.5 million).

D.    <u>Quintanilla properly received a two-level increase for obstruction of justice</u>.

Quintanilla properly received a two-level increase for obstruction of justice because he attempted to influence a witness, Juan Gonzalez, and tamper with Gonzalez's testimony by asking Gonzalez to falsely testify that Quintanilla was his consultant. ROA.23-40033.6523 (¶83), 3709; *see* USSG § 3C1.1. The increase applies to "threatening, intimidating, or otherwise unlawfully influencing a … witness ..., directly or indirectly, or attempting to do so." USSG § 3C1.1, cmt. n.4(A).

Gonzalez testified about Quintanilla's attempt to influence his testimony, and the court had "no doubts as to Mr. Gonzalez's credibility." ROA.23-40033.3709. Indeed, the judge remarked, "if ever I think there was a clear instance of an attempt to obstruct, this was it." ROA.23-40033.3707. She characterized Gonzalez as "appalled that anybody would have the nerve to come ask him to do this." ROA.23-40033.3707. The court stated "there is no question" that Quintanilla asked Gonzalez to mislead, if not "outright lie to the FBI," and Quintanilla's parting message when he returned to Gonzalez's office–"you better not fuck this up for me"—"leaves no doubt" as to his intention. ROA.23-40033.1011, 3707.

Quintanilla asserts that he "clearly provided" services as a consultant and that Gonzalez's different definition of consultant at trial was insufficient for the enhancement. Br. 52; *see* ROA.23-40033.3706-07 (objection on same basis). As noted, the judge credited Gonzalez's trial testimony. When a judge's findings are based on witness credibility determinations, this Court affords even greater deference to the findings. *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985). Although Quintanilla characterizes Gonzalez's testimony differently from the judge, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574; *see United States v. Flournoy*, No. 92-8263, 1992 WL 386808, at *2 (5th Cir. Dec. 23, 1992) (unpublished) (applying *Anderson* to reject defendant's contrary assessment of the court's finding of § 3C1.1); 5th Cir. R. 47.5.3 (unpublished decisions before 1996 are precedent). The court's finding of obstruction of justice was not clearly erroneous. *See Mendoza-Gomez*, 69 F.4th at 280 (application of § 3C1.1 was not clearly erroneous).

**VIII.**    **Arturo Cuellar's challenge to his $947,454 money judgment is waived for inadequate briefing or fails under plain-error review.**

A.    Standard of Review

If the issue is not waived for inadequate briefing, this Court reviews a challenge to a forfeiture money judgment raised for the first time on appeal for plain error. *United States v. Sanjar*, 876 F.3d 725, 749 (5th Cir. 2017) (reviewing for plain error forfeiture money judgment issue raised for the first time in a rehearing petition); *see* Preface and Issue I (standard of review).

B.    Relevant Facts

On November 1, 2022, the Government filed a brief in support of forfeiture that the trial testimony of FBI Agent Robin Gray and IRS Agent Sonia Hurtado showed that Arturo Cuellar received at least $1,278,500 in checks from Lopez or his purported business entities from 2011 through November 2014. ROA.23-40068.4346. Trial testimony from Gray, Hurtado, John Cuellar, Lucia Lozano (QRM's previous co-owner), and AC III showed that Arturo Cuellar authorized the issuance of $405,000 from QRM as a bribe disguised as a payment for John Cuellar's legal services to QRM. ROA.23-40068.4346. Arturo Cuellar retained at

least $873,500 ($1,278,500 - $405,000), but trial evidence showed that QRM deducted the bribe payments as sham legal expenses on tax returns. ROA.23-40068.4347.

The Government anticipated that evidence at a forfeiture hearing would show that because of the sham legal expenses attributed to QRM, Arturo Cuellar misrepresented his personal taxable income for tax years 2011 through 2014, allowing him to retain an additional $73,954. ROA.23-40068.4347. Consequently, the amount would be $947,454 ($873,500 + $73,954). ROA.23-40068.4347.

On the same date, the court held a forfeiture hearing, during which Hurtado testified. ROA.23-40068.4341 (notice of setting), 10923 (docket sheet). Despite having a duty to order all transcripts necessary for the appeal, Arturo Cuellar did not order the transcription of the hearing as part of the appellate record. *See* Fed. R. App. P. 10(b)(1), (2).

On December 5, 2022, the Government moved for a forfeiture order, noting that Hurtado's testimony at the forfeiture hearing "further solidif[ied] the nexus between the charged offenses and forfeiture." ROA.23-40068.4352. The Government requested forfeiture in the form of

a personal money judgment of $947,454. ROA.23-40068.4352-53. *See* Fed. R. Crim. P. 32.2(b)(1), (c)(1).

On December 9, 2022, the court found that Hurtado had testified regarding forfeiture and that the Government had established the requisite nexus between the money and the conviction. ROA.23-40068.4356. The court ordered a money judgment of $947,454. ROA.23-40068.4357.

C.    Arturo Cuellar waived Issue VIII for inadequate briefing (including failure to order the forfeiture hearing transcript).

At the outset, Arturo Cuellar's failure to order the forfeiture hearing transcript as a part of the record is reason alone for this Court to deem Issue VIII waived. *See* Fed. R. App. P. 10(b)(2); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 890-91 (5th Cir. 1993) (appellant waived his appellate arguments by failing to include the necessary transcript in the record), *opinion reinstated in part on reh'g,* 61 F.3d 1113 (5th Cir. 1995).

It is unclear what Arturo Cuellar challenges on appeal regarding the forfeiture money judgment. He seems to conflate forfeiture and restitution, but they serve distinct purposes. *United States v. Sanjar*, 876 F.3d 725, 751 (5th Cir. 2017). "Restitution is remedial in nature; its goal is to make the victim whole." *Id.* "Forfeiture is punitive; it seeks to

disgorge any profits or property an offender obtains from illicit activity." *Id.*

Arturo Cuellar was ordered to pay $4.1 million in restitution to the City of Weslaco, jointly and severally with Quintanilla and John Cuellar. ROA.23-40068.4528-29. As this Court has observed, "the restitution statute expressly authorizes joint and several liability." *Sanjar*, 876 F.3d at 749 (citing 18 U.S.C. § 3663A(a)(1), 3664(h)). The restitution order is separate from Arturo Cuellar's forfeiture money judgment of $947,454, which was not imposed under joint and several liability. ROA.23-40068.3731, 4356-57.

Without explanation, Arturo Cuellar states he presents a "novel issue" "briefly addressed" in *United States v. Reed*, 908 F.3d 102, 127 (5th Cir. 2018) regarding *Honeycutt v. United States*, 581 U.S. 443 (2017). Br. 46. As discussed below, the *Honeycutt/Reed* issue does not apply here.

Without explanation, he states that he "did not directly benefit from alleged money transfers and should not be held jointly and severally liable." Br. 46. He was not held jointly and severally liable for his money judgment and he does not identify the money transfers.

He asserts that Lopez's money judgment was $2.5 million, and that he should not be held jointly and severally liable for "the amount already accepted by Lopez as his responsibility." Br. 47. But he has not shown that he was held accountable for Lopez's money judgment, and the record, as summarized above, shows otherwise.

Arturo Cuellar then switches gears from the money judgment to restitution. He purports to challenge the restitution because the Government did not prove a single conspiracy. Br. 47-48. As explained in Issue I, his challenge to a single conspiracy fails.

This multifarious, vague, conclusory briefing is deficient under Rule 28(a)(8). Issue VIII is waived. *See, e.g., United States v. Stalnaker*, 571 F.3d 428, 439-40 (5th Cir. 2009) (issues waived for inadequate briefing because the brief contained "a laundry list of grievances," but did "not fully explain them" or cite the record or relevant law); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (multifarious ineffective assistance of counsel claim was waived).

D.  No plain error regarding *Honeycutt/Reed*.

As the Government noted in the district court, in *Honeycutt*, the Supreme Court held that "forfeiture, albeit under a different forfeiture

provision, forecloses joint and several liability for co-conspirators." ROA.23-40068.4345. The forfeiture at issue there involved the drug forfeiture statute, 21 U.S.C. § 853(a)(1), and its statutory plain language did not support joint and several liability. *Honeycutt*, 581 U.S. at 448-52. This case, however, involves forfeiture under 18 U.S.C. § 981(a)(1)(C). ROA.23-40068.4232-33.

In *Reed*, this Court noted the circuits disagree on whether joint and several liability applies to forfeitures under § 981(a)(1)(C). 908 F.3d at 127 n.103 (citing cases). This Court declined to address the issue because the Government conceded the joint and several liability findings there should be vacated. *Id.* at 127.

Given the circuit disagreement on whether joint and several liability applies to § 981(a)(1)(C), any error here would not be clear or obvious. More importantly, no error occurred. Consistent with the Government concession in *Reed*, the Government here proceeded under the assumed theory that joint and several liability does not apply to § 981(a)(1)(C). The Government advocated for a money judgment based solely as applied to Arturo Cuellar and the court imposed it. There is no error, plain or otherwise.

## <u>CONCLUSION</u>

This Court should affirm the district court's judgments.

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

*s/ Renata Gowie*
RENATA GOWIE
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102
Fax: (713) 718-3302

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I, Renata Gowie, Assistant United States Attorney, hereby certify that on November 14, 2023, an electronic copy of the Appellee's Brief was served by notice of electronic filing via this court's CM/ECF system upon appellants' counsel.

Upon notification that the electronically filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be placed in the United States Mail, postage prepaid, addressed to the Clerk. *See* 5th Cir. R. 25.2.1, 31.1; 5th Cir. ECF filing standard E(1).

*s/ Renata Gowie*
RENATA GOWIE
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 16,694 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and an unopposed motion for an extra-length brief under 5th Cir. R. 32.4 is pending.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in Century Schoolbook font, 14 point font for text and 12 point font for footnotes.

3.  This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because this brief has been redacted of any personal data identifiers.

4.  This brief complies with the electronic submission of 5th Cir. R. 25.2.1, because this is brief is an exact copy of the paper document.

5.  This brief is free of viruses because this brief has been scanned for viruses with the most recent version of the McAffee Endpoint Security scanning program.

_s/ Renata Gowie_
RENATA GOWIE
Assistant United States Attorney
Date: November 14, 2023
